## Case No. 884.

### BANK OF COMMERCE v. RUSSELL.

[2 Dill. 215.][1]

Circuit Court, W. D. Missouri. 1873.

BANKRUPT ACT — MONEY HELD IN TRUST —EQUITABLE ASSIGNMENT—RIGHTS OF HOLDER OF PROTESTED DRAFTS OF BANKRUPT BANK.

1. A creditor of a bank which collects money and fails to pay it over, has no priority in bankruptcy over the other creditors of the bank.

[Cited in Illinois Trust & Sav. Bank of Chicago v. First Nat. Bank of Buffalo, 15 Fed. 860.]

2. The holder of the protested draft of such a bank is not entitled in bankruptcy to priority over the other creditors of the drawer, merely because the drawee (another bank) may have had funds of the drawer in its hands at the time it refused to accept the draft.

[Cited in Re Smith, Case No. 12,990.]

[See Corser v. Craig, Case No. 3,255.]

[Appeal from the district court of the United States for the western district of Missouri.

[In bankruptcy. From an unreported decree sustaining a demurrer to the bill, plaintiff appeals. Affirmed.]

The only question is as to the sufficiency of the bill of complaint. The allegations in the bill are in substance: That the firm of Leonard, Dunbaugh, & Co. has been duly adjudged bankrupt, and the said Russell duly elected and qualified as the assignee of said firm and of each of its members; that in the

[1] [Reported by Hon. William Cranch, Chief Judge.]

[1] [Reported by Hon. John F. Dillon, Circuit Judge, and here reprinted by permission.]

months of September and October, 1870, the complainant in the course of its banking business, sent certain notes, amounting in the aggregate to $826.53, to the firm of Leonard, Dunbaugh, & Co., then engaged in the banking business at Pleasant Hill, Missouri, for collection only; that said firm collected the money; that said firm had $2,000 in the Second National Bank in St. Louis, Missouri, on deposit, subject to their draft, and in part payment of the amount collected, sent complainant a draft on the said Second National Bank for $413.16 as a portion of the money collected; and that said draft was presented, payment demanded and refused, and protested; that said assignee has received from the estate of said firm of Leonard, Dunbaugh, & Co. the sum of $82,653, and has the same in possession, and that he has received and has in his possession the said sum of $2,000 so deposited in the said Second National Bank, on which said draft was drawn: It is further averred that the money so collected was collected and received by said firm as the agent of complainant, and in special trust and confidence, and was in no wise a part of the estate of said firm. It is also averred that all the members of said firm, as well as the firm, have been adjudged bankrupt, and that the assets are insufficient to pay the debts, and that complainant is without remedy at law. The prayer is that the said assignee be required to set apart and pay over to complainant the money so collected out of the assets of said firm of Leonard, Dunbaugh, & Co. and for general relief. The plaintiff appeals.

DILLON, Circuit Judge. The bank which files the bill seeks to maintain it on two grounds. The first is that the money collected for it by the bankrupts is money which they held in trust for it, and hence that it did not vest in the assignee.

I am of opinion upon the statements of the bill that this principle does not apply, and that the relation between the bankrupts and the plaintiff at the time of the bankruptcy was simply the relation of debtor and creditor. It does not appear that the identical money collected on the notes was kept by the bankrupts separate and distinct from their other money, and in that shape came into the hands of the assignee. We need not, therefore, consider what would have been the rights of the parties had this been shown.

It is next claimed that the draft drawn by the bankrupts for $413.16 on the Second National Bank, where they had at the time $2,000 on deposit, and which draft was protested, amounted to an equitable assignment of that amount in favor of the plaintiff, and that this equity should be judicially recognized and enforced as against the assignee. If it were assumed or conceded that under any circumstances such a draft can amount to an equitable assignment in favor of the payee of that amount of the drawers' funds

in the hands of the drawee, such a principle can not be applied where it would contravene the purpose of the bankrupt act. The plaintiffs, as the holders of the draft drawn by the bankrupts, were simply creditors like other draft-holders, and it would scarcely do to say that when private bankers become insolvent, holders of their bills shall, to the extent of funds in the hands of the drawee, be entitled, as against other creditors, to priority.

Affirmed.

NOTE, [from original report.] An ordinary draft for part of a fund is not an assignment of the fund pro tanto unless assented to, or unless there be an obligation to accept, express or implied. Mandeville v. Welch, 5 Wheat. [18 U. S.] 277, 286. In relation to ordinary checks on bankers, the same doctrine has been frequently held. Bullard v. Randall, 1 Gray, 605; 2 Pars. Notes & B., 61. And this is the doctrine of the supreme court of the United States. Bank of Republic v. Millard, 10 Wall. [77 U. S.] 152. But as to such checks the contrary has been sometimes held: Fogarties v. President, etc., of State Bank, 12 Rich. Law, 518; Munn v. Burch, 25 Ill. 35; Roberts v. Corbin, 26 Iowa, 315; but it is expressly stated in this last case that the doctrine is limited to checks, and does not extend to bills of exchange: Id. 326. The cases on the subject will be found mostly collected in 2 Parsons on Notes and Bills, 61, and referred to in those above cited. The principle cases are also cited by Mr. Justice Davis, in his opinion in Bank of Republic v. Millard, supra.