[No. 1505. Decided October 22, 1894.]

FRANCIS H. BOWMAN *et al.*, *Respondents*, v. THE FIRST NATIONAL BANK OF SPOKANE, WASHINGTON, AND F. LEWIS CLARK, *Receiver*, *Appellants*.

BANKS AND BANKING — COLLECTION BY INSOLVENT BANK — REMITTING DRAFT.

Where a draft is sent to a bank for collection and remittance, and the bank collects same and places the proceeds in its vaults, merely forwarding a draft in payment, the bank does not thereby assume the position of trustee for the sum collected, but the relation between the correspondent and the bank is that of creditor and debtor.

*Appeal from Superior Court, Spokane County.*

*C. S. Voorhees* (*Jones, Voorhees & Stephens*, of counsel), for appellants.

*Richardson & Gallagher*, for respondents.

The opinion of the court was delivered by

HOYT, J.— This cause was tried in the lower court upon an agreed statement of facts, and upon its determination there has been brought here and submitted on the record made up of such agreed statement with the findings of the

court as to the facts and law flowing therefrom. In deciding the case, the superior court struck out and refused to consider certain paragraphs of such statement, but its action in so doing cannot affect the hearing here. If its action was erroneous, this court will consider these paragraphs as though they had not been stricken, and if it was correct we would disregard them even although they had not been stricken.

From such statement of facts it is made to appear that on the 11th day of July, 1893, the respondents sent to the First National Bank of Spokane, for collection and remittance, a draft on P. Larson & Co. for $946. That said bank received said draft on the 14th day of July, and on the 22d collected the same from said P. Larson & Co. That the respondents did not at the time have any account with said bank. That, on the 22d day of July, the bank, after having collected the money, issued its draft in the usual form on the American Exchange National Bank of New York City, payable to the order of respondents, for the amount of the collection, less its charges, and mailed it to the respondents at their address, postage prepaid. That before said draft reached the respondents, the bank being insolvent, did, on the 26th day of July, suspend and cease to do a banking business. That thereafter the respondents, in the usual course of business, duly presented said draft to said American Exchange National Bank for payment, and payment thereof was refused. That the said First National Bank, in sending said draft to respondents by mail as aforesaid, followed the usual and established custom of banks in making remittances of moneys collected for customers from outside the city where the bank is located. That the money so collected was by the bank placed in its vaults and commingled with other large sums of money contained therein. That soon after the bank ceased to do business a bank examiner took possession of its assets and soon after trans-

ferred them to a receiver duly appointed for the purpose of ·
winding up its affairs.   That at all times after the collection
was made, as above stated, until the time the assets of the
bank were so transferred to the receiver there were moneys
in the vault of the bank in excess of the amount collected
for the respondents.   That demand had been regularly
made upon both the bank and the receiver for the moneys
so collected, but that the same, or any part thereof, had
never been paid.

Under these facts it is claimed, on the part of the re-
spondents, that in making the collection the defendant bank
acted as their agent and held the money, when collected,
as their trustee, that by reason of the same having been
placed with other moneys of the bank and the receiver hav-
ing come into possession, by virtue of his office, of certain
of such moneys, amounting to more than the sum col-
lected, became their trustee, and that so much of such
money as is necessary to pay their claim is a trust fund,
which he must pay to them without regard to the claims
of general creditors.

On the part of the appellants it is claimed that the trans-
action between the respondents and the defendant bank cre-
ated the relation of debtor and creditor as to the moneys
collected, and that the bank never held such moneys as the
trustee of the respondents.   It is further claimed that even
if the bank did so hold such moneys, the trust was not im-
pressed upon the property in the hands of the receiver, for
the reason that the identical money collected, or any part
thereof, had not been traced into his hands.   The latter
claim has been most elaborately argued by the respective
counsel.   From such argument it is made to appear that
there is a conflict of authority upon this question.   Some
of the courts hold to the strict rule that the trust cannot be
enforced · unless the specific property, or something into
which it has been changed, can be followed and identified;

and others, that whenever it can be shown that the estate in the hands of the receiver or assignee has been benefited or increased by the trust property, it will be impressed with the trust relation, and others take position between these two extremes.

These questions are very interesting, and of such paramount importance that they should not be decided except in a case where their decision is necessary to a determination of the rights of the parties. In the case at bar such decision is not necessary, if the relation created by the transaction between the respondents and the defendant bank constituted the bank the debtor of the respondents instead of their trustee at the time the bank went into the hands of a receiver. And this relation must depend upon the understanding with which the respondents must be held to have sent the collection. The question of what that understanding must be held to have been is presented under two branches. One requires its determination upon the question of the forwarding of the claim for collection and remittance, uninfluenced by anything done thereafter, and the other upon the like facts as influenced by the action of the parties after the collection. The determination of the first branch of the question in the light of the admission in the statement of facts, does not seem to us difficult. It is admitted that when the bank, after having made the collection, placed the money in its vaults as its own and remitted therefor its draft on its New York correspondent, it acted in accordance with the general custom of banks in such transactions, and such being the fact, it would seem that the relation of debtor and creditor was created. If this was the general custom, the legal effect of forwarding the collection and directing remittance of the proceeds would be the same as though the money had been paid to the bank for its draft, which it was at the same time required to issue. And such a transaction between a bank

and one of its customers has never been held to create any trust relation between such customer and the bank.   Under such circumstances the title to the money passes to the bank, and its responsibility to the one who pays it to them is thereafter that of the drawer of a bill of exchange.

It follows that, under the conceded facts, the bank became the debtor of respondents, and not their trustee. This admission was stricken out in the lower court, but we see no reason why it was not material to show that a general custom existed which had a bearing on the transaction between the parties.   And we think that the rights of the parties should be determined in the light of this general custom.   If it was a general custom, the parties are presumed to have dealt with reference thereto, and in order to correctly interpret their intentions the court or jury should be put in possession of the custom in the light of which they transacted their business.   But the result would necessarily be the same if this paragraph of the statement of facts had been left out.   The custom of banks in regard to making collections and remitting therefor is so well established and has become so universally known that knowledge thereof must be imputed to the courts, and they are therefore required to take judicial notice of the fact that a bank, when it makes a collection for a foreign correspondent, never, unless specially directed so to do, remits the specie collected, but instead thereof always takes the specie to its own use and sends therefor its draft or certificate of deposit.

Among the large list of authorities which could be cited to sustain this proposition, we call attention to the following: 1 Morse, Banks and Banking, § 248; *Jockusch v. Towsey*, 51 Tex. 130; *Marine Bank v. Fulton Bank*, 2 Wall. 252; *Marine Bank v. Rushmore*, 28 Ill. 463; *Tinkham v. Heyworth*, 31 Ill. 519.

It follows that, in our opinion, the transaction, even if

uninfluenced by any action of the respondents after the collection was made, would have established between them and the defendant bank the relation of creditor and debtor, and not that of *cestui que trust* and trustee.    But, if this were not so, the act of the respondents in receiving the draft, and forwarding it for collection, would clearly show an intent on their part to pass the title to the specie collected to the defendant bank, and accept its responsibility as drawer of the draft of which they were the payees in lieu thereof.    They accepted such draft without objection, and disposed of it in the usual course of business, and by so doing put themselves in the same relation to the bank as they would have been if they had forwarded the money, and directed it to send its draft or certificate of deposit therefor.

No funds impressed with a trust in favor of the respondents were in the hands of the bank at the time it ceased to do business, hence the funds in the hands of the receiver are not impressed with any trust in their favor.

The judgment of the superior court must be reversed, and the cause remanded with instructions to dismiss the action.

DUNBAR, C. J., and SCOTT, ANDERS and STILES, JJ., concur.