[No. 2609. Decided February 24, 1898.]

BENJAMIN HALLAM, *Respondent*, v. PHILIP TILLING-
HAST, *Receiver*, AND THE COMMERCIAL NATIONAL
BANK, *Appellants*.

APPEAL — AUTHORITY OF ATTORNEY TO TAKE — SETTLEMENT OF STATE-
MENT OF FACTS — POWER OF FORMER JUDGE TO CERTIFY — COL-
LECTIONS BY BANK — RELATIONS OF PARTIES.

A receiver of an insolvent bank, who appears of record also
as attorney for the bank itself, may prosecute an appeal for the
bank, when no question as to his authority to appear as such at-
torney has been raised in the lower court.

The settlement and certifying of a statement of facts by the
court is a judicial act, which can be exercised only by one vested
with judicial power; hence, the act of March 8, 1893 (Bal. Code,
§ 5061), which authorizes and requires a judge whose term of of-
fice has expired to settle statements of facts in actions previously
tried before him, is invalid and unconstitutional, as attempting to
impose judicial functions on one whose judicial powers, as pre-
scribed under the constitution, have terminated with the expira-
tion of his term of office. (ANDERS, J., dissents.)

The collection by a bank of a draft placed in its hands for
that purpose establishes the relation of debtor and creditor, and
not one of trust, between it and the party delivering the draft,
although the delivery may have been made for the purpose of
collection only, without any deposit, or agreement to deposit any
part of the proceeds of the draft. (GORDON, J., dissents.)

Appeal from Superior Court, Pierce County.—Hon.
JOHN C. STALLCUP, Judge. Reversed.

*Tillinghast & Pritchard*, for appellants.

*Lueders & Leo*, for respondent.

The opinion of the court was delivered by

SCOTT, C. J.—The respondent moves to dismiss this cause
on the ground that no appeal was taken by the bank, the
contention being that the receiver could not appeal for the

bank or independent of it; but, without considering the last question, it is shown by the record that the bank appeared in the action by Mr. Tillinghast, who was also receiver, as its attorney, and his authority to so appear was not questioned in the lower court and consequently it can not be questioned here. It follows that he could take an appeal for the bank as well as in his own behalf as receiver. It is contended also that no sufficient appeal bond was given. It appears that a cost bond was filed and also a separate stay bond. The decision with reference to the appeal on the part of the bank disposes of the question as to the cost bond and that was sufficient to confer jurisdiction on this court. The motion to dismiss is denied.

The respondent also moves to strike the statement of facts, on the ground that the same was settled by the judge after his term of office had expired, which calls in question the validity of § 12 of the act relating to the settlement of statements of facts, approved March 8, 1893 (Laws of 1893, p. 116, § 12; Bal. Code, § 5061), which authorizes and requires a judge whose term of office has expired to settle statements of facts in actions previously tried before him, it being contended that these provisions of said act are in conflict with §§ 1 and 5, art. 4, of the constitution.

The precise question raised here has never been expressly passed upon by this court, although the effect or result of several cases is to decide the principle in favor of the respondent. In *State ex rel. Hinchey v. Allyn*, 7 Wash. 285 (34 Pac. 914), which was an application for a mandamus to compel an ex-judge to settle and certify a statement brought under the act, Laws 1893, p. 6, the writ was refused on the ground that the law did not purport to compel the judge to act.

Prior to these laws, in *Faulconer v. Warner*, 2 Wash.

525 (27 Pac. 274), it was held that an ex-judge had no authority to settle a statement in a cause which had been tried before him. The inference might be drawn from the discussion of the case that the legislature could empower him to settle a statement, but the question was not involved nor expressly ruled upon. But it was held in that case that the action of the judge in settling a statement was judicial in its nature.

In *Gunderson v. Cochrane*, 3 Wash. 476 (28 Pac. 1105), it was held that the court has authority to settle a statement where the term of office of the judge who tried the cause has expired.

A number of decisions elsewhere have been called to our attention upon this subject, and in many instances the power of a former judge to settle a statement, after his term had expired, has been sustained, but in nearly every instance it was under the view that the settlement of the statement is a ministerial act, and not a judicial one, or on the principle that the finding of the trial judge as to what took place is conclusive. That it is essentially judicial in our practice is beyond question. In *Van Lehn v. Morse*, 16 Wash. 219 (47 Pac. 435), where a controversy arose between the appellant and the judge who tried the cause over certain matters which it was claimed took place at the time of the trial, this court, upon an application by the appellant to compel a settlement of the statement accordingly, appointed a referee to take testimony and certify it to this court, which was done, and the contention of the appellant was sustained. No such practice could be had on the theory that the action of the judge in such matters is ministerial, nor could it be harmonized with the proposition that an ex-judge might be authorized, but could not be compelled, to act, consequently we are bound to follow our former hold-

ings to the effect that the action is judicial in its nature; it would follow also that if an ex-judge could act at all he could be compelled to act, for the practice of permitting a judge to proceed or not as he should see fit, or to undertake to proceed and then discontinue, could not be tolerated for a moment. The question now to be expressly determined is whether the legislature could empower and obligate an ex-judge to act as a court after his term of office has expired. Of course, while taking such an office has some of the features of a contract, that would no longer apply, for where judges were elected after this act was passed they could be held to have assumed all the burdens of the office, and the only question is as to the constitutionality of the statute. Section 1, article 4, vests the judicial power of the state in the supreme and superior courts, etc., and § 5 provides that the term of office of a judge of the superior court shall be four years, consequently when his term of office has expired he is no longer a judge and clearly can no longer exercise judicial functions. It follows that the act in this respect is invalid, being in direct conflict with the constitution. The statement of the question decides it under these provisions and our former holdings.

No hardship can result, for the statement can be settled by the court. The identity of the judge is lost in the court, and the court continues, although the term of a judge is ended. Where a controversy arises the ex-judge can be subpoenaed and compelled to testify.

In the older practice, in many jurisdictions, the action of the judge who tried a cause in settling a statement could not be controlled. His own decision as to what took place was final; but that does not obtain here, nor is the difficulty of determining what did take place as great as formerly, owing to the fact that stenographers are usually employed now to take down the proceedings of the trial in de-

tail. The motion to strike the statement is granted. As this was a question of practice which seems to have been fully briefed, and, the court having reached a conclusion, it was thought best to decide it at this time, although this case could as well have been disposed of without doing so. If decided now, owing to the lapse of time since the last election of judges, it will not be likely to affect other pending appeals injuriously, but if postponed it might come up again soon after another election and affect a good many.

As to the merits the question is left, whether the judgment rendered in the lower court is not contrary to the findings. The action was brought to recover the amount of a draft payable in Oregon, collected by the bank for the plaintiff while it was doing business. The material findings are as follows:

"That thereafter, to-wit: on the 14th day of October, 1895, plaintiff delivered said draft to the above named defendant Columbia National Bank for collection.

"That on the 18th day of October, 1895, said defendant, the Columbia National Bank, by its agent, had collected for plaintiff from said treasurer of said company, said sum of four hundred seventy-eight and 75-100 dollars on said draft.

"That the said Columbia National Bank had in its hands money in excess of the said sum of $478.75 when said bank suspended, which went into the hands of said receiver.

"That said plaintiff delivered said draft to said bank for collection only and for no other purpose.

"That plaintiff never deposited or agreed to deposit the proceeds of said draft or any part thereof with said bank."

In finding two it was found that the bank became insolvent on October 24, 1895, a few days after the draft was collected. Do the findings negative a special agency or trust as to the proceeds of the draft? If they do, the judgment cannot be sustained. In *Bowman v. First National Bank*, 9 Wash. 614 (38 Pac. 211, 43 Am. St. Rep. 890),

a very similar question was decided contrary to the contention of the respondent here, although some stress was laid upon the fact there that the bank, in addition to making the collection, was directed to remit the proceeds, and that following the custom the same would be remitted in the shape of a draft or certificate of deposit, and not in specie. It was stated, however, that

". . . the transaction, even if uninfluenced by any action of the respondents after the collection was made, would have established between them and the defendant bank the relation of creditor and debtor, and not that of *cestui que trust* and trustee."

It was also stated that the custom of banks in regard to making collections and remitting therefor, was so well established and so universally known that the courts are required to take judicial notice of the fact that a bank, when it makes a collection, never, unless specially directed so to do, remits the specie collected, but remits in the form of a draft or certificate. *Blake v. State Savings Bank*, 12 Wash. 619 (41 Pac. 909), involved a somewhat different question, but the discussion covered the principle in this case and in effect decided it adversely to the respondent. The principle there in issue, under one view of the case, being a wrongful conversion of the funds; but it was held to establish simply the relation of a debtor and creditor on the ground that the money converted had been commingled with other funds of the bank, and had lost its identity so that a trust could not be established. The respondent undertakes to distinguish this case from the two mentioned, because there was no direction to remit the proceeds, but that the bank was to hold the money until the plaintiff called for it. There is no contention that there was any agreement that the particular money should be preserved in specie. In fact, it must be presumed, under the custom stated, that the particular money paid to satisfy the draft

was never received by the bank here, as, following the custom, the draft would be sent by the bank to its correspondent where the draft was payable, for collection, and, when paid, under such custom the specie would not be remitted, but the bank sending the draft would be credited with the amount merely, and such matter left for future settlement in the balancing of accounts. The respondent was bound to know this custom. The fact that he never specially agreed to deposit the proceeds of the draft with the bank made no difference. If he wanted to except it from the usual custom there should have been an agreement that the specific money should be set aside for him, or disposed of in some particular way, or, at least, that upon the payment of the draft a like amount should be segregated from the general funds of the bank and kept for him, thus keeping the proceeds in a special substituted form. Had this been done prior to the insolvency of the bank no doubt a trust would have resulted as against the receiver, if the particular proceeds in either the original or substituted form came into his possession. There is no equity in a rule giving such claims as the plaintiff's a preference over the general creditors. He trusted the bank under the general custom, in depositing the draft for collection, much the same as any other general depositor trusts a bank. The finding that the bank had a sufficient amount of money to discharge this obligation at the time the receiver took possession negatives the idea that it had as a separate trust the particular money collected, even if the custom were not regarded. Nor does it appear, but there may have been other claims against the bank like this one of the plaintiff's, if it was regarded as a trust fund, more than sufficient to have exhausted its assets. We attach no importance to these latter suggestions, however. The authorities upon these questions are somewhat conflicting, as stated in

*Bowman v. First National Bank, supra.* We have examined all the cases cited by both parties, and think that the decided weight is in favor of the appellant's contention. Following the custom in such cases, the money, upon making a local collection even, would be placed with the general moneys of the bank, and this would follow as well from a single transaction as from many, and when the creditor should call for payment, the particular moneys would not be handed out to him, but he would be required to check against the general funds of the bank, or to return the certificate of deposit if one had been issued to him. He would be paid from the general fund in either event under such custom. The most applicable case to support his contention cited by the respondent is that of *McLeod v. Evans*, 66 Wis. 401 (28 N. W. 173, 214, 57 Am. Rep. 287), but that case was expressly overruled by the court in *Nonotuck Silk Co. v. Flanders*, 87 Wis. 237 (58 N. W. 383). In support of the general proposition that only the ordinary relationship of debtor and creditor is established by substantially the facts here, see *Akin v. Jones*, 93 Tenn. 353 (27 S. W. 669, 42 Am. St. Rep. 921); *Bank of Commerce v. Russell*, 2 Dill. 215; *Anheuser-Busch Brewing Ass'n v. Clayton*, 56 Fed. 759; *Muhlenberg v. Northwest Loan & T. Co.*, 26 Ore. 132 (38 Pac. 932); *Tinkham v. Heyworth*, 31 Ill. 519; *Illinois Trust & Sav. Bank v. First National Bank*, 15 Fed. 858; *Frelinghuysen v. Nugent*, 36 Fed. 229; *Philadelphia National Bank v. Dowd*, 38 Fed. 172; *City of Spokane v. First National Bank*, 68 Fed. 982; *Little v. Chadwick*, 151 Mass. 109 (23 N. E. 1005).

There is no fraud found in this case on the part of the bank, if that would make any difference. Also, the draft deposited was the plaintiff's own property, and not held by him in trust for another. It is not contended that the evi-

dence would warrant any more favorable findings for him than the ones made, if we were at liberty to consider the testimony. In fact, there was a strong contention by the appellants otherwise. It follows that there was no trust established, and that the judgment must be reversed, and the cause remanded with instructions to enter a judgment in favor of the appellants as contended.

DUNBAR and REAVIS, JJ., concur.

ANDERS, J., (dissenting).—I fully concur in the foregoing opinion of the Chief Justice on the merits of this case, but not in the ruling on the motion to strike the statement of facts. Conceding that the act of determining what transpired during the trial of a cause is in its nature judicial, it nevertheless seems to me that it is not beyond the power of the legislature to authorize a judge, after going out of office, to state and certify what facts were disclosed, and what questions were decided, at the trial. In such cases all that is done by the judge is to complete the history of the trial had, and to put in the required form the facts found during his term of office. I do not think that this court, in the cases heretofore decided, and cited in the opinion, intended to, or did in fact, go to the length of holding a statute like that now under consideration unconstitutional. Nearly all of these cases were decided before this statute was enacted. Other states have constitutions like ours prescribing that the judicial power shall be vested in certain specified courts, yet in several of them it has been held, after due consideration, that judges who presided at trials might lawfully certify bills of exceptions, after the expiration of their term of office. See *State v. Barnes*, 16 Neb. 37 (19 N. W. 701); *Davis v. Menasha*, 20 Wis. 194; *Hale v. Haselton*, 21 Wis. 325; *Galbraith v. Green*, 13 Serg. & R. 85; 2 Spelling, Extraordinary Relief, § 1412; *Johnson v. Higgins*, 53 Conn. 236 (1 Atl. 616).

It is impossible for the court, as contra-distinguished from the judge, to settle or certify a bill of exceptions or statement of facts, and our legislature has said, in unmistakable terms, that the judge, or person, before whom a cause is tried shall perform that duty. The legislature having prescribed the procedure, I think the court should follow it. In my opinion the motion to strike the statement should be denied.

GORDON, J., (dissenting).—I concur in the disposition made of the motions, and also in all that is said upon the questions of practice, but dissent from the conclusion reached by my brethren in regard to the merits. I think the evidence conclusively shows that a trust relation was created between the bank and respondent, which continued until the appellant went into possession, that the proceeds of the draft went into the hands of appellant, and inasmuch as he is not in law a *bona fide* holder for value without notice, there is nothing to prevent the trust character being impressed upon the funds in his hands. Upon the facts the case differs widely from *Bowman v. First National Bank*, 9 Wash. 614 (38 Pac. 211), where the proceeds of the collection were to be remitted to the party who was seeking to impress the trust, and they were remitted according to the usual custom of banks, while here it was the duty of the bank to hold the proceeds of the collection until called for by respondent. I think the learned trial judge reached a correct conclusion, and that the judgment should be affirmed.