[No. 18144. Department Two. May 19, 1924.]

NORTHWEST LUMBER COMPANY, *Respondent,* v. SCANDINAVIAN AMERICAN BANK OF SEATTLE *et al., Appellants.*[1]

BANKS AND BANKING (26)—DEPOSITS—SPECIAL DEPOSITS—RIGHT OF RECOVERY. On the insolvency of a bank, a special depositor may reclaim his entire deposit from the general mass with which it is commingled and is not confined to the equal lien of general depositors on the general assets.

SAME (26) — GENERAL OR SPECIAL DEPOSITS — CHECKS — WITHDRAWAL AND DEPOSIT AS SPECIAL FUNDS. The general deposit of a customer in a bank is changed to a special deposit to the extent covered by the drawing a check thereon and its acceptance by the bank before insolvency, for the purpose of meeting an interest payment on bonds of the customer, which the bank, as trustee, collected for the bond holders prior to each interest due date.

SAME (26). The fact that such check, drawn and deposited with instructions to pay the interest prior to the due date, was not

[1]Reported in 225 Pac. 825.

marked paid or used to pay the interest, and that the bank was insolvent and in the possession of the supervisor of banking at the time of the interest due date, does not affect the nature of the special deposit as between the drawer of the check and the general creditors of the bank; since the check, as between the parties, was cashed on its issuance and acceptance; and there was thereupon a commingling of funds charged with a trust rendering an actual segregation unnecessary, since it was the bank's duty to make one.

SAME (26)—INTEREST (20)—SPECIAL DEPOSITS. In an action on a preferred claim against an insolvent bank to recover a special deposit, interest is properly allowed from the date the bank was taken over by the bank supervisor.

Appeal from a judgment of the superior court for King county, Ronald, J., entered January 18, 1923, in favor of the plaintiff, in an action to enforce a claim against an insolvent bank, tried to the court. Affirmed.

*W. V. Tanner* and *John P. Garvin,* for appellants.
*Donworth, Todd & Higgins,* for respondent.

FULLERTON, J.—On August 16, 1911, the respondent, Northwest Lumber Company, issued a number of its obligations payable over a period of years. The interest on the obligations was made payable on the first days of January and July of each year. To secure the payment of the principal and interest as the same fell due, the lumber company executed to the Scandinavian American Bank, of Seattle, a mortgage deed covering certain described real and personal property owned by it. The deed described the bank as trustee, and provided that the bank should hold the property in trust for the benefit of the purchasers of the obligations, which obligations were made payable at the banking house of the bank. The deed also provided that the lumber company should, prior to each due day of the principal and interest, deposit with the bank sufficient funds to pay the principal and interest then maturing.

From the time of the execution of the instrument to the time of the circumstances subsequently to be mentioned, the terms of the instrument were carried out by the parties. Prior to each maturing date of principal or interest on the obligations, the lumber company furnished the bank with funds necessary to make the payments, and the bank, in the performance of the trust it had assumed, made the payments out of the fund so provided.

On June 24, 1921, the lumber company had on deposit with the bank, subject to its general checking account, a sum in excess of $85,000. On that day it forwarded to the bank its check for $5,220, to meet the payments on the outstanding obligations maturing on July 1, 1921. With the check it sent a letter, explaining the purpose of the check, in the following form:

"We hand you herewith check No. 5970 for $5,220.00 in payment of six months interest on Northwest Lumber Company's outstanding bonds of $174,000.00."

The bank was authorized by its charter to do a general trust business, and had as one of its employees a person whose duty it was to attend to its general business relating to trusts of this character. On receipt of the check, the cashier of the bank forwarded the check to the person having charge of its trust department. It was by him received, but for some reason, not explained in the record, was not marked as paid or cancelled, nor was the amount thereof charged to the lumber company's general account. On June 30, 1921, prior to the due day of the interest obligation, the bank was taken over by the state supervisor of banking, who since that time has proceeded with its liquidation as an insolvent institution. The undertaking on the part of the bank to meet the interest payments was not recognized by the supervisor, and

the lumber company was compelled to make payment through other channels.

Between the time of the delivery of the check to the bank and the time the bank was taken over by the supervisor, the lumber company's general deposit account with the bank remained unchanged, and the bank, during the same period and at the time it was so taken over by the supervisor, had in its vaults cash largely in excess of the amount of the check.

Later on the lumber company presented a claim to the supervisor for the amount of the check, claiming a preferential payment from the assets of the bank. The supervisor refused to allow it other than as a general claim, and the present action was instituted to enforce it as a preferred claim. Judgment went in favor of the lumber company in the court below, and the supervisor of banking appeals.

The question presented by the record is a narrow one, although we have not found it free from difficulty. Before discussing the particular question, it may be well to notice certain of the applicable general principles. All deposits of money made with a banker may be divided into two classes, namely, general deposits and special deposits. The former character of deposit is the more common one in which the depositor leaves his money with the banker for his own convenience. In effect the depositor thereby loans his money to the banker, and the relation of debtor and creditor is created between them. The banker has the right to use the money deposited for his own purposes; his only obligation being to return the amount thereof to the depositor either in partial payments or as a whole, as the depositor demands it. A special deposit, on the other hand, is where the depositor leaves his money with the banker for a particular purpose or for a par-

ticular use.   It does not create the relation of debtor and creditor, but rather that of trustee and *cestui que trust.*   The banker obtains no title to the money, and may not use it for his own purposes; his obligation being to apply it to the uses and purposes for which he receives it.   The distinction between the two forms of deposit is a wide one, not only as it affects the immediate parties thereto, but as it affects other creditors of the banker.

On the insolvency of the banker, all of his general depositors have an equal lien on his general assets and can have a return of no more than their proportionate share; while the special depositor may reclaim his entire deposit if it is found intact, or, under the modern modification of the rule, may reclaim it from the general mass with which it has been commingled, if it appears that the banker has not, subsequent to the time of the intermingling, reduced the mass to an amount less than the amount of the special deposit. These principles, we think, are well established by the authorities.   Without segregation, and without pointing out the applicability of the case to the particular point, we cite the following: *Bowman v. First National Bank,* 9 Wash. 614, 38 Pac. 211, 43 Am. St. 870; *Blake v. State Savings Bank,* 12 Wash. 619, 41 Pac. 909; *Hallam v. Tillinghast,* 19 Wash. 20, 52 Pac. 329; *Carlson v. Kies,* 75 Wash. 171, 134 Pac. 808, 47 L. R. A. (N. S.) 317; *Rugger v. Hammond,* 95 Wash. 85, 163 Pac. 408; *Heidelbach v. Campbell,* 95 Wash. 661, 164 Pac. 247; *Kies v. Wilkinson,* 101 Wash. 340, 172 Pac. 351; *Zimmerli v. Northern Bank & Trust Co.,* 111 Wash. 624, 191 Pac. 788; *Hitt Fireworks Co. v. Scandinavian American Bank,* 114 Wash. 167, 195 Pac. 13, 196 Pac. 629; *In re Central Bank & Trust Co. v. Ritchie,* 120 Wash. 160, 206 Pac. 926; *Raynor v. Scandi-*

*navian American Bank,* 122 Wash. 150, 210 Pac. 499, 25 A. L. R. 716; *Marine Bank v. Fullon Bank,* 22 Wall. (U. S.) 252; *Bank v. Armstrong,* 148 U. S. 58; *American Can Co. v. Williams,* 176 Fed. 816; *Empire State Security Co. v. Carroll County,* 194 Fed. 593; *People v. City Bank of Rochester,* 96 N. Y. 32.

Tested by the rules above stated, it is at once apparent that had the lumber company, instead of sending its check to the bank for the amount to become due on the interest payment, sent to the bank the cash for the amount due, it would, under the circumstances shown, have constituted a special deposit which it could have reclaimed in its entirety after the bank passed into the hands of the supervisor of banking, and this notwithstanding the bank might have intermingled the money with its general cash deposits. A like result would have followed had the lumber company required its messenger carrying the check to the bank to exact payment of the check and, after payment, leave the money so received with the bank as a deposit to pay the maturing interest obligation when it became due. The difference between transactions such as these and the transaction in question, it seems clear, is one of manner rather than one of legal effect. By presenting the check to the bank and directing what disposition should be made of the fund represented by it, the lumber company sought to collect this part of the debt due it from the bank and deposit the fund for a special purpose. In other words, it sought thereby to change a part of its general deposit into a special deposit. The bank, by accepting the check with knowledge of the purposes of the lumber company, consented to the change. It thereby lost its right of general lien on the fund, its right of offset against it, its title thereto, its right to use it for its own purposes, and had no

right with respect to it other than to pay it out in accordance with the directions of the lumber company. While the lumber company could have changed its directions with respect to the fund prior to its actual disposition in accordance with the directions given, the bank had no such right. Its sole right and duty was to carry out the instructions given it by the lumber company. It follows from these considerations, we think, that the relation of the parties with respect to the fund were changed by the transaction between them; that their relation thereafter with respect to it was not that of debtor and creditor, but that of trustee and *cestui qui trust*. As between the immediate parties thereto, we conclude that it cannot be successfully contended that the lumber company was not entitled to claim the fund as a special deposit.

What reason is there for contending that the fund is not a special deposit as between the lumber company and the general creditors of the bank? The first of the reasons suggested by the supervisor, he states in the following language:

"The bank, of course, may be indebted to the plaintiff, but what is the property, the title to which is in the plaintiff? Nothing except the unused check with the letter. To the return of these the plaintiff is entitled. The letter and check were to serve a specific purpose, which, of course, was frustrated by the closing of the bank prior to July 1, 1921. The check coming into the hands of the liquidator of the bank in the same condition as delivered by the plaintiff to the bank and the check not having been cashed and no funds substituted in lieu of the check, the plaintiff, of course, cannot prevail except as to the return of its check."

But this reasoning, in our opinion, overlooks the substance of the transaction. The check, it is true, was not marked as paid, nor did the bank set apart

from its general funds the amount of money called for by the check into a special fund.   But these acts, had they been carried out, would have been here nothing more than evidence of the transaction.   The check and the letter did not, as between the parties, represent value.   They were mere directions from the one party to the other as to property which in itself alone had value.   The subsequent insolvency of the bank in no way changed the original nature of the check and letter, and they do not now have value.   To allow a recovery of them only, would be to allow a recovery of the shadow and not the substance.   But the argument mistakes the real question at issue.   That question is, was there such a segregation of this particular fund from the moneys of the bank as to withdraw it from the general lien of the general creditors.   If there was such a segregation, it matters little what means were taken for its accomplishment.   Nor do we think it accurate to say that the check was not cashed.   Plainly it was cashed as between the parties, as to all intents and purposes, by the mere issuance and acceptance of the check with that understanding.   The pertinent matter in the objection is the fact that there was no actual segregation of the fund; no separation of it from the bank's general fund.   But this objection is answered by the rule with respect to the intermingling of funds.   Since there can be a recovery where the bank intermingles its special funds with its general fund, so, on the like principle, can there be a recovery where the bank leaves a special fund intermingled with its general fund after it becomes its duty to segregate it.

The case of *Raynor v. Scandinavian American Bank,* 122 Wash. 150, 210 Pac. 499, 25 A. L. R. 716, cited in support of the proposition that nothing but the check

and letter can be recovered, lends no support to the proposition. In that case the checks under consideration were checks drawn on a solvent bank and deposited by the drawee in the insolvent bank. They represented a solvent fund and had value in the hands of the holder, and a recovery of the checks was equivalent to a recovery of the fund, which is not so in the present instance.

The second reason urged is that the situation of the lumber company is not different from the situation of other creditors of the bank who held uncashed checks at the time it was closed by the supervisor. But we think there is a difference between the situations. The lumber company presented its check at a time when the bank was a going concern, when it was open for the transaction of business, and its check was accepted and (in legal effect) cashed by the bank. In the other instances, there was no presentation during the business life of the bank, and no cashing of the checks. The holders of the checks were mere general creditors of the bank, and are not in positions such as to entitle them to claim that there was a withdrawal of the sums represented by the checks from the general funds of the bank and deposited as special funds.

As a final reason, against a recovery, it is urged that there was by the transaction no augmentation of the assets of the bank. The fact here assumed is undoubtedly true as applied to the general assets of the bank; that is to say, it is true in the sense that the bank held no greater assets at the completion of the transaction than it held at its beginning. But it is not our understanding that this is the principle upon which the doctrine of augmentation rests. The equitable right to follow misapplied property into the hands of the parties receiving it depends upon the ability of

identifying it in specie, or the ability of identifying the property with which it has been confused, or into which it has been converted. If this cannot be done there can be no recovery, even though it be shown that the general assets of the estate have been increased to the amount and value of the property. The rule as applied to money which has been intermingled with other money thus means that it must be shown that the mass of money from which it must be taken has been increased by the amount of money which has been misapplied, not that it must be shown that the general assets of the possessor of the money have been increased. In the instant case, there is a showing that the money which came into the hands of the supervisor on the insolvency of the bank was greater by the amount of the check than it would have been had the bank performed its duty and made the actual segregation, and in consequence an augmentation of that mass.

Of the cases bearing upon the particular question at issue, the one nearest in point of fact is perhaps the case of *People v. City Bank of Rochester*, 96 N. Y. 32. In that case a depositor in the bank named had certain outstanding notes payable to the bank maturing in January, 1883. In the preceding November the depositor, wishing to provide for the payment of the notes, sent his check to the bank in a sum sufficient for that purpose. The bank had prior thereto sold the notes, but nevertheless accepted the check with knowledge of its purpose. Prior to the time the notes matured, a receiver was appointed to wind up its affairs. After the appointment of the receiver, the depositor applied to the court for a return of the amount represented by the checks. The receiver defended on the ground that the depositor was a general creditor of the bank, and entitled only to the share of a general

creditor. The court required a return of the money, and, in discussing the questions involved, used this language:

"The transaction in question was not between the bank and Sartwell, Hough & Ford in their relation of debtor and creditor nor in their relation of bank and depositor. The object of the latter was to provide a fund for the payment of specific notes, and the engagement of the former was to apply that fund to such payment. Thus a trust was created, the violation of which constituted a fraud by which the bank could not profit, and to the benefit of which the receiver is not entitled. (*Libby v. Hopkins*, 104 U. S. 303; *In re Le Blanc*, 14 Hun. 8; affirmed, 75 N. Y. 598.) Those cases stand upon the ground of a specific appropriation of a particular fund for the payment of the claim there brought in question. So does the one at bar. That fact is lacking in the case of *People v. Merchants and Mechanics' Bank* (78 N. Y. 269), on which the appellant relies; and this distinction is pointed out by the learned judge who delivered the opinion in that case.

"Counsel for the appellant contends 'that there never was any fund set apart for a particular object, or any intention or purpose to set apart such a fund.' I do not regard this, if true, as of much importance, but the appeal papers do not permit us to accept such construction.

"The checks of the petitioners were money assets in the hands of the bank and were so treated by all parties; they were delivered to it with explicit directions to apply the proceeds on payment of the notes; those directions were assented to by the bank officer, and the checks collected from the general fund. From that moment the bank was bound to hold the money for and apply it to that purpose, and no other, or failing to do so, return it to the petitioner. As to it, the bank was bailee or trustee, but never owner. It is estopped from saying that all this is matter of book-keeping. It assumed a duty, and the receiver as its representative is bound by it. Nor does this obligation at all

depend, as the appellant seems to suppose, upon the question, when, where and to whom the notes were to be paid; whether presently or in the future is immaterial.

"The specific object for which the fund was created was the payment of the notes, and its character does not depend upon those incidental circumstances. The checks were impressed with a trust, and no change of them into any other shape could divest it so as to give the bank or its receiver any different or more valid claim in respect to them than the bank had before the conversion. (*Van Alen v. Am. Nat. Bank,* 52 N. Y. 1; *Dows v. Kidder,* 84 id. 121.)"

So in *State v. Grills,* 35 R. I. 70, 85 Atl. 281, where a similar question was presented, this language was used:

"The ordinary relation of a banker and his customer is that of debtor and creditor as to the deposits made by the customer with the banker. This relation, arising upon a general deposit, may be changed as to the whole or a part of such general deposit. Without actual delivery to the customer, and a redeposit by him for a special purpose, such general deposit by agreement may be converted into a special deposit and become a fund in the hands of the banker with which he is intrusted for the specific purpose named in the agreement creating the special deposit. Such fund is impressed with a trust, the violation of which is a fraud."

As bearing upon the principle involved, the following cases may be consulted: *Stoller v. Coates,* 88 Mo. 514; *Smith v. Sanborn State Bank,* 147 Iowa 640, 126 N. W. 779, 140 Am. St. 336, 30 L. R. A. (N. S.) 517; *Dolph v. Cross,* 153 Iowa 289, 143 N. W. 669; *Goodyear Tire & Rubber Co. v. Hanover State Bank,* 109 Kan. 772, 204 Pac. 992.

The trial court allowed interest on the claim from the date the bank was taken over by the supervisor,

at the statutory rate.    This is assigned as error, but the ruling is supported by the case of *Hitt Fireworks Co. v. Scandinavian American Bank,* 121 Wash. 261, 209 Pac. 680, and that case can be consulted for the reasons supporting the rule.

The judgment is affirmed.

MAIN, C. J., PEMBERTON, MITCHELL, and BRIDGES, JJ., concur.