[No. 20189.    Department Two.    March 17, 1927.]

CITIZENS STATE BANK OF MOLSON, *Appellant*, v. SPOKANE
& EASTERN TRUST COMPANY, *Respondent*.[1]

[1] BANKS AND BANKING (31)—RELATION BETWEEN BANK AND
DEPOSITOR FOR COLLECTION—INSOLVENCY OF COLLECTING BANK.
Where, under a custom of the banks in this state, in receiving
payment of items forwarded to them for collection, to take pay-
ment in drafts of the debtor bank, instead of cash, at their
peril, a collecting bank accepted such a draft in payment, the
relation of debtor and creditor was created between the for-
warding and collecting banks; and the latter, discharging the
debt by its own draft, must stand the loss when the draft,
taken on collection and forwarded for collection, was dis-
honored on account of the intervening insolvency of the drawer
thereof.

Appeal from a judgment of the superior court for
Spokane county, Oswald, J., entered April 5, 1926,
upon findings in favor of the defendant, in an action
upon contract, tried to the court. Affirmed.

*G. M. Ferris* and *P. D. Smith*, for appellant.

*Graves, Kizer & Graves*, for respondent.

MACKINTOSH, C. J.—Although transactions on two
separate days are involved in this suit, it is better, in
order to make the statement of the case as little con-
flicting as possible, to refer to only one of them, as
both raise the same question and differ only in the
amounts involved.

The respondent, a bank in the city of Spokane, has,
as a correspondent in the town of Molson, the appel-
lant bank, and on March 22, 1924, in the usual course of
business between them, the respondent forwarded to
the appellant for collection five checks drawn on the
Molson State Bank, another bank in the town of Molson,

[1]Reported in 254 Pac. 238.

aggregating $593.53, together with two checks drawn on the appellant in the sum of $5.10. Accompanying these items, was a collection letter stating that the items were enclosed "for collection and return." Upon receiving the items, the appellant credited the checks drawn on itself to the account of the respondent, and presented the checks drawn on the Molson State Bank to that bank for payment, along with other checks drawn on that bank which the appellant had taken across its own counter in the ordinary course of business, the entire amount claimed from the Molson State Bank being $676.29; and that bank, upon presentation of these checks issued a draft payable to the appellant and drawn on "X" Bank in Spokane in the sum of $676.29. The appellant then issued its own draft to the respondent for the sum of $598.63 in payment of all the items forwarded to it by the respondent, including the checks drawn upon itself. On March 25, 1924, the appellant forwarded for collection to the respondent the draft for $676.29 issued to it by the Molson State Bank, which draft was duly presented to the "X" Bank, and payment was refused because of the failure of the Molson State Bank prior to presentation. The appellant had maintained a deposit with the respondent, and the respondent, upon receiving the draft issued by the Molson State Bank to the appellant, conditionally credited the appellant's account with the amount of the draft; but upon its dishonor, in accordance with the agreement of the parties, the respondent charged back the amount of such draft against the appellant's account. This action was brought to recover from the respondent the sum represented by the checks which had been forwarded to it for collection from the Molson State Bank.

[1]    The question of who is to bear the loss is largely

determinable by ascertaining the custom obtaining between banks in these communities in regard to the method of collecting items sent by correspondent banks. The trial court found that it was not the custom of banks and bankers in this state, in presenting items forwarded to them for collection, to receive in payment of such items the draft of the bank from which the items were collectible, but that

".  .  .  it was the custom of collecting banks in such case to receive whatever form of payment was most satisfactory to themselves, and pursuant to such custom such collecting banks received either cash or drafts, but whenever they received drafts they did so at their own peril."

Although there is a conflict in the evidence in regard to this custom, a review of the testimony is satisfactory in sustaining the trial court's finding, and we adopt it as the fact in this case.

Under those circumstances, although the rule may not be of universal acceptance, still it was the rule early established in this state, that, upon the dishonor of the draft issued by the bank from which the collections are to be made, given to the collecting bank, this latter bank becomes responsible to the forwarding bank for the amount of the items. While until the collection is made the relation between the forwarding bank and the collecting bank is that of principal and agent, after the collecting bank has made the collection, either in cash or by draft, or in any other way in which it is satisfied to make it, and assumed ownership of the amount, then the relationship between it and the forwarding bank is one of debtor and creditor; for, having accepted from the bank from which collection is to be made payment in the form which it has selected, and having mingled the proceeds with its own assets, it becomes responsible for the amount of those proceeds

to the forwarding bank. This was the rule first announced in *Bowman v. First National Bank,* 9 Wash. 614, 38 Pac. 211, 43 Am. St. 870, where it was held that, when a draft is sent to a bank for collection and remittance and that bank collects the amount and forwards a draft to the sending bank in payment, the relation between the correspondent bank and the collecting bank is that of creditor and debtor.

The same rule was reaffirmed in *Hallam v. Tillinghast,* 19 Wash. 20, 52 Pac. 329, and has not been changed, as we view it, by any subsequent decision, although the circuit court of appeals for the ninth circuit, in *Spokane & Eastern Trust Co. v. United States Steel Products Co.,* 290 Fed. 884, in considering a banking case arising from this state, intimates that the rule of these cases has been modified by the decision in *Raynor v. Scandinavian Am. Bank,* 122 Wash. 150, 210 Pac. 499, 25 A. L. R. 716. But a reading of that case shows that it is not in conflict with these earlier cases to which it does not refer, for in it there was only involved the deposit of checks in an insolvent bank after insolvency, and the court held that such deposit did not create the relation of debtor and creditor, but a relation of trustee and *cestui que trust,* allowing the depositor to receive the return of his deposit. In the Federal case referred to and relied on by the appellant, that court recognized that the rule in this state was as stated in *Bowman v. First National Bank, supra,* unless modified by the opinion in *Raynor v. Scandinavian Am. Bank, supra,* but applied the contrary rule, resting their decision upon the "general commercial law of the courts of the United States," and not being "bound by the decisions of the courts of the state." This state is not alone in holding to its rule, for we find the same rule obtaining in other jurisdictions. *First Nat. Bank of Richmond*

*v. Davis,* 114 N. C. 343, 19 S. E. 280; *Young v. Teutonia Bank & Trust Co.,* 134 La. 879, 64 South. 806; *First Nat. Bank v. Wilmington & W. R. Co.,* 77 Fed. 401; *Security Savings & Trust Co. v. King,* 69 Ore. 228, 138 Pac. 465; *Commercial Bank of Penn. v. Armstrong,* 148 U. S. 50. See, also, 3 R. C. L. 636; 3 Am. & Eng. Ency. Law (2d ed.), 819 *et seq.*

Among the appellant's citations of authorities holding contrary to this rule, principal reliance seems to be placed upon the case of *Bank of Poplar Bluff v. Millspaugh,* 275 S. W. (Mo.), 579, from which extended quotations in appellant's brief are made. While that case supports appellant's theory, the facts are materially different from those involved in the present action and might be distinguished on that ground; but, taking the case as an authority against the rule adopted by this court, still it recognizes that this rule has the sanction of a great many other courts.

Appellant refers to our decisions in *Pacific B. & L. Ass'n v. Central Bk. & Tr. Co.,* 127 Wash. 524, 221 Pac. 313; and *Spokane Valley State Bank v. Lutes,* 133 Wash. 66, 233 Pac. 308, as sustaining the rule for which it contends; but an examination of these cases shows that they do not go to the extent claimed for them. In the former, the question was involved whether a collection became a general or special deposit and the court held that this was to be answered by determining the intention of the parties, and that intention having been to consider it a special deposit, upon a failure of the bank the funds could be recovered—clearly not the question involved in this case; and in the latter case was involved the question of negligence in the failure of a collecting bank to take cash instead of a draft. Here, of course, there is no such question involved.

The fact that the draft which the appellant accepted

from the Molson State Bank in payment of these col-lections, although made payable to itself and including items which it owned itself, was forwarded to the re-spondent for collection, does not alter the legal effect of the transaction. It is no different than had this draft been sent by the appellant directly to the bank upon which it was drawn for either remittance to itself or for deposit in that bank to its credit, or for any other disposition which it might have directed to be made of the proceeds. It is purely incidental that the appellant forwarded this draft to the respondent; it did not thereby transfer that draft to the respondent in payment of the items which respondent had for-warded. That payment was intended to be made by the appellant's own draft which it forwarded to the respondent to cover the items sent it for collection.

The law having been long established, we see no reason for a departure from it in this case; and under the facts as found the judgment of the trial court was correct in dismissing the appellant's action.

Affirmed.

TOLMAN, BRIDGES, ASKREN, and MAIN, JJ., concur.