[No. 20743. *En Banc.* March 8, 1928.]

## RYER GRAIN COMPANY, *Appellant*, v. AMERICAN SECURITY BANK *et al., Respondents.*[1]

[1] BANKS AND BANKING (31)—RELATION BETWEEN BANK AND DEPOSITOR FOR COLLECTION. Where one deposits in a bank commercial paper for collection, without specific instructions, he makes such bank his agent to select a collecting agent for the collection and transmission of the proceeds.

[2] EVIDENCE (6)—JUDICIAL NOTICE—CUSTOMS AND USAGES—BANK COLLECTIONS. Courts take judicial notice of a banking custom for collecting banks receiving commercial paper to remit by cashier's check or draft on some other bank, unless specifically requested otherwise.

[3] BANKS (33)—COLLECTIONS—RIGHTS AND LIABILITIES AS TO PROCEEDS. Money collected by a bank, and remitted by cashier's check before insolvency, in accordance with the custom of banks in the absence of a request for the actual cash, does not, on the intervening insolvency of the bank, become a trust fund, entitling the creditor to a preference over other creditors.

Appeal from a judgment of the superior court for Benton county, Truax, J., entered April 13, 1927, in favor of the defendants, in an action to establish a preferred claim in bankruptcy proceedings. Affirmed.

*Cosgrove & Terhune,* for appellant.

*James P. Neal* and *C. L. Holcomb,* for respondents.

TOLMAN, J.—The appellant, as plaintiff, brought this action to establish a preferred claim against the American Security Bank, in the hands of the supervisor of banking for liquidation. The trial court denied to the plaintiff any preference, and allowed its claim in full as a general claim against the assets of the American Security Bank, from which result the plaintiff has appealed.

[1] Reported in 264 Pac. 1000.

The case is brought here on the facts as found by the trial court, no statement of facts having been brought to this court. The findings disclose the following facts necessary to be considered in disposing of the controversy.

On September 12, 1925, the appellant drew a sight draft on the Kennewick Flour Mills Company for $3,700 with exchange, attached thereto certain negotiable warehouse receipts calling for the delivery of wheat of the value of the draft, and deposited the draft, with the warehouse receipts attached, in the Bank of California at Seattle, using the customary deposit slip, which indicated a right to charge the draft back to the appellant in the event that the bank did not receive the proceeds in due course. Upon the deposit of the draft, the Bank of California credited the amount thereof, $3,700, to the appellant's checking account, and then forwarded the draft, with the warehouse receipts attached, to the American Security Bank, with a letter of instructions, in which it was said:

"We enclose herewith the following items for collection and remittance. Please do not hold for convenience of payee as we handle these items as cash."

On September 15, 1925, the draft, with the warehouse receipts and letter of instructions, were all received by the American Security Bank at Kennewick, and promptly thereafter the draft was presented to the drawee, the amount of the draft was paid to the Security Bank by the drawee, and the warehouse receipts surrendered to it. This payment was made by a check drawn upon another Kennewick bank, and the amount of the check, $3,700, was immediately collected by the Security Bank and went to swell its immediate assets. On September 16, 1925, the Security Bank

issued its cashier's check for $3,700, payable to the
Bank of California, and mailed it to that bank at
Seattle.  The cashier's check was received by the Bank
of California on September 17, and was endorsed by
the Bank of California and by it deposited in the Fed-
eral Reserve Bank, Seattle branch.  On September 19,
1925, the Federal Reserve Bank, Seattle branch, for-
warded the cashier's check to the Federal Reserve
Bank, Spokane branch.  On September 21, 1925, the
Federal Reserve Bank, Spokane branch, received the
cashier's check and immediately forwarded it to the
Security Bank at Kennewick.  On September 22, 1925,
the Security Bank, for the purpose of paying its
cashier's check so forwarded to it, sent to the Federal
Reserve Bank, Spokane branch, its draft on the Old
National Bank of Spokane for the amount thereof.

On September 24, 1925, before the draft on the Old
National Bank was collected, the Security Bank was
closed by the supervisor of banking and its affairs
passed into his hands for liquidation, and he immedi-
ately ordered payment stopped on the draft on the
Old National Bank.  On that same day the Federal
Reserve Bank, Spokane branch, presented to the Old
National Bank the draft so drawn, payment was re-
fused by reason of the direction of the supervisor of
banking, and the amount thereof was charged back by
the Spokane branch of the Federal Reserve Bank to
the Seattle branch of the Federal Reserve Bank, and
by the latter charged back to the Bank of California,
which in turn charged the item back to the appellant
company, and so notified it on October 3, 1925.

In due course thereafter, all subsequent holders of
the item in question assigned their interest, each in
turn, to the institution to which the item had been
charged back, and this chain of title was completed on
December 28, 1925, by the Bank of California assigning

back to the plaintiff company all of its right, title and interest in and to the collection made by the Security Bank, that bank's cashier's check and the draft drawn by that bank upon the Old National Bank.

Under these circumstances, it is unnecessary to consider the rights of the several intermediate parties connected with this transaction, as by these assignments all of their rights, if any, have been revested in the appellant company, and the matter can be treated from the standpoint of its ownership of the instruments and of the fund.

Thereafter, the appellant company presented to the supervisor of banking its duly verified claim for $3,700 of the funds of the Security Bank in the liquidator's hands, upon the theory that the Security Bank had, by the collection of the draft, augmented its assets in the amount of $3,700; that more than that amount of cash remained in its hands, at all times up to its closing, and passed into the hands of the supervisor. It appears, however, that, immediately before and at the time of the closing of the Security Bank, it had on hand only $3,183 in cash in its vaults, and the appellant company now claims that it is entitled to have this sum adjudged to be a trust fund belonging to it, and to have the remainder of its claim allowed as a general claim.

[1] The question here to be determined is: Did the money collected by the Security Bank become a trust fund belonging to appellant, or did it become the money of the collecting bank, and that bank become the appellant's debtor?

When the appellant drew its draft and deposited it with the Bank of California, it, at the least, made that bank its agent to select a collecting agent and to transmit the draft for collection through such agent. The Bank of California presumably knew what banks were

available as collecting agents for this item and something of the financial standing of such banks. And it knew, what everybody in this day and age knows, that a collecting bank, unless otherwise specifically instructed, will remit the proceeds of a collection by its cashier's check or by its draft on some other bank. The Bank of California selected the Security Bank as the collecting agent, well knowing it would, unless otherwise instructed, remit as it did remit; and it therefore relied upon the credit of the Security Bank to so remit and authorized it to so remit.

[2] But it is urged that there was no finding by the trial court of a custom among banks to remit for collections made in the manner indicated, and that we may not take judicial notice that such a custom exists. The general rule as to judicial notice of common business customs is well stated in 15 R. C. L. 1122, § 51, where it is said:

"The courts will take judicial cognizance of commercial usages and customs which have become so well established and generally known that they are considered to be a part of the law merchant of the country, as for instance the custom in relation to protests and notices of nonpayment of bills of exchange; courts will likewise notice customs pertaining to business in general, and the manner of conducting it. Thus, recognition may be had of the usage of merchants in different lines of business to deal with each other on mutual credits and to furnish each others' customers with articles which are charged to the merchant and not to the buyer, and to settle balances accordingly. As matters of ordinary and common knowledge, too, courts will notice the changes in the course of business in the country and the new processes of practical utility in facilitating trade, and will consider such innovations in adjusting the rights of parties. The general custom and course of business in any trade if they be sufficiently notorious are also proper subjects of judicial observation. So judicial notice will be taken of

the general business methods of railway and other well known or quasi-public corporations, when these methods are universally practiced or commonly known to exist, and it has been said that recognition will be had of the general custom of life insurance companies to require written applications for life insurance, and in the absence of evidence courts will presume that it was followed in a particular instance. The custom of banks, either with favored customers or with debtors who are not able to pay at maturity, to renew obligations on payment of a new discount is within the range of judicial cognizance, and on the ground of common knowledge, notice may be taken that banks and other corporations continue in many instances to do their regular and ordinary business for long periods, though in a condition of actual insolvency as disclosed by subsequent events. But judicial notice stops where common knowledge ceases.''

As long ago as 1894, in the case of *Bowman v. First Nat. Bank*, 9 Wash. 614, 38 Pac. 211, 43 Am. St. 870, this court said:

''The custom of banks in regard to making collections and remitting therefor is so well established and has become so universally known that knowledge thereof must be imputed to the courts, and they are therefore required to take judicial notice of the fact that a bank, when it makes a collection for a foreign correspondent, never, unless specially directed so to do, remits the specie collected, but instead thereof always takes the specie to its own use and sends therefor its draft or certificate of deposit.''

If then, when a much smaller percentage of our people habitually dealt with banks, this custom was universally known, that fact is much more true today, and we are far more imperatively bound to take judicial notice of it.

The *Bowman* case was cited and approved in *Hallam v. Tillinghast*, 19 Wash. 20, 52 Pac. 329, and neither case has ever been by this court criticized or overruled.

That in later cases the custom has been proved and found to exist from the evidence in the case, in no wise militates against the force of the cases cited.

But it is pointed out that in *First Nat. Bank of Brewster v. Commercial Bank & Trust Co.*, 137 Wash. 335, 242 Pac. 356, this court said:

"It is next said that the acceptance of the drawee's draft instead of lawful money was justified by custom. But the sufficient answer to this is, that no such custom is shown in the record, and it is not a matter of which the court may take judicial knowledge. Of its own knowledge, the court knows that the practice varies with the circumstances. In dealings between banks of good financial standing, well known to each other, it is possibly the general practice to accept without question drafts in payment of obligations. But the reverse is the rule when the circumstances are not these. There is, therefore, no such general custom, and the court cannot know without proof the customs of a particular place."

That language must be considered in the light of the facts there involved. In that case, the forwarding bank itself held a deposit or balance to the credit of the bank on which the checks were drawn, more than sufficient to pay the checks, and instead of charging the checks against that balance on its own books, as it had the right to do, it sent the checks to the bank on which they were drawn and accepted that bank's draft on a Seattle bank in payment. Inevitably and properly the court there held, in effect, that the custom involved in this case was not the custom there contended for, and that we did not know of, and could not take judicial notice of, any custom applicable to the peculiar facts of that case.

Finally it is contended, apparently with considerable confidence, that the case of *Pacific Bldg. & Loan Ass'n v. Central Bank & Trust Co.*, 127 Wash. 524, 221 Pac.

313, upholds appellant's position.  But in that case the fund in question was held to be a. special deposit under the rule laid down in *Washington Shoe Mfg. Co. v. Duke,* 126 Wash. 510, 218 Pac. 232, 37 A. L. R. 611. In the vital facts of that case, we see no similarity to the controlling facts here.

We hold, therefore, that it is a matter of common knowledge, as well known to all engaged in financial and commercial transactions and to this court as the fact that night follows day, that collecting banks, unless specifically requested to do so, do not remit the actual cash collected, but always remit by cashier's check or draft on some other bank.  To refuse to take judicial notice of that custom would be as absurd as the reputed habit of the ostrich to thrust its head into the sand.

[3]  The Bank of California, when it sent the item for collection, well knew and fully expected that the collecting bank would remit by its cashier's check or its draft on some other bank, and by not requesting the remittance of the actual cash collected, it authorized the collecting bank to remit in the customary way; and by accepting the cashier's check, it ratified that method of remittance.  The appellant, knowing the custom and making no special request for the remittance of the actual cash, acquiesced in the custom, and both the Bank of California and the appellant are therefore bound by the custom, and neither may now claim to be other than a general creditor of the collecting bank.

The judgment of the trial court was therefore right, and it is affirmed.

FULLERTON, ASKREN, MAIN, and MITCHELL, JJ., concur.