[No. 12761.   Department Two.   January 15, 1916.]

UNITED IRON WORKS, *Respondent*, v. E. WAGNER, *Appellant.*[1]

CONTRACTS—PERFORMANCE OR BREACH—FURNISHING PLANS—QUESTION FOR JURY.  A contract for installing an irrigating pumping plant providing that the defendant should build the foundations after plans furnished by the defendant, requires intelligible and workable plans, and it is error for the court to decide, as a matter of law, that plaintiff was excused from strict performance by defendant's failure to build the foundations, where there was evidence that the only plan furnished was a mere pencil drawing or sketch not drawn to scale, and from which the defendant, though a carpenter and bridge builder of experience, could not complete the foundation without additional information.

CONTRACTS—SUBSTANTIAL PERFORMANCE — RECOVERY — REDUCTION. In an action for the contract price of installing an irrigating pumping plant, full performance of which was alleged to have been prevented by defendant's failure to build the foundations, it is error to allow recovery for the entire amount of the contract; since, where deviations are made from full performance, not wilfully or in bad faith, the recovery is reduced by the damages caused by such deviations, which is usually the expense of completing the contract.

SAME—SUBSTANTIAL PERFORMANCE—QUESTION FOR JURY.  In such a case, it is error to take the case from the jury, where there was a conflict in the evidence as to whether plaintiff's failure to complete the installation was wilful or in bad faith, and as to whether the defendant was at fault in failing to build the foundation.

CONTRACTS — PERFORMANCE OR BREACH — DELIVERY — EVIDENCE— QUESTION FOR JURY.  In an action to recover for installing an irrigation pumping plant on defendant's ranch, which provided for delivery of the machinery "on your ground," whether there was a substantial delivery is a question for the jury, where heavy machinery, the frame alone weighing 2,785 pounds, was landed from a boat on a gravel bar, near defendant's ranch, the well where it was to be installed being two hundred and fifty or three hundred feet distant up a very steep and rocky bank, and defendant could not move the machinery up to the well without risk of injuring it, and also without being considered as having accepted such delivery.

SAME—SUBSTANTIAL PERFORMANCE—WAIVER — QUESTION FOR JURY. In such a case, it is also a question for the jury whether defendant waived strict performance of the contract, where the machinery was never moved from the bar by either party, and there was testimony

[1]Reported in 154 Pac. 460.

to the effect that defendant at numerous times requested to know when plaintiff would complete its installation, and did not consider that the machinery had been delivered to him according to the terms of the contract.

CONTRACTS—PERFORMANCE OR BREACH—REASONABLE TIME—PAROL EVIDENCE—ADMISSIBILITY—QUESTION FOR JURY. Where a written contract for the installation of an irrigating pumping plant specified no time for completing the work, the law implies that it shall be within a reasonable time; and while testimony that a particular time was orally agreed upon so as to permit irrigating that season is inadmissible as varying the terms of the writing, the question as to what would be a reasonable time under all the circumstances and within the contemplation of the parties is one for the jury, upon competent evidence.

Appeal from a judgment of the superior court for Chelan county, Pendergast, J., entered September 24, 1914, in favor of the plaintiff, upon withdrawing the case from the jury, in an action on contract. Reversed.

*W. O. Parr*, for appellant.

*B. B. Adams* and *Williams & Corbin*, for respondent.

HOLCOMB, J.—Respondent contracted in writing, on April 20, 1910, for the furnishing and installation by it of a pumping plant on appellant's ranch on the Columbia river, some eighteen miles north of Wenatchee and near Orondo. The time when the installation should be completed is not fixed by the contract. The contract is in the form of a letter or proposal and an acceptance thereof by appellant. A long list of articles of machinery, apparatus, and appliances is set forth in the contract to constitute the pumping plant, and the contract contains the following provisions:

"All agreements are contingent upon strikes, accidents or other causes beyond our control. All orders and contracts are taken subject to approval of the main office and quotations are for immediate acceptance and subject to change without notice.

"The above outfit to be installed complete on your ranch near Orondo, with the understanding that you dig the pit and trench and furnish one man and team to help on the in-

stallation, and that you build the foundations after plans furnished you by us.

"The above for the net sum of sixteen hundred and ninety-four dollars ($1694). Terms, $130 with the order, $400 when the machinery is delivered on your ground, and the balance thirty days after the plant is complete and tested, provided that the test is not delayed through any cause which is not our fault."

The respondent alleged that it had performed its part of the contract in all respects, except as it had been hindered and prevented from doing so by the failure of appellant and his neglect to dig a pit and trench of sufficient and adequate size to build foundations, as provided for in said contract; and the complaint prays for the entire sum remaining unpaid on the contract.

Appellant answered, admitting the execution of the contract, but asserting that the same was not all of the contract between the parties, inasmuch as no time was named therein within which the installation was to be made, and alleged that the plant was to be installed within a reasonable time, to wit, within thirty days, and within time for the irrigation of the crops for the season of 1910; and appellant denied each and every other material allegation in the complaint. He also set up a counterclaim in which he sets out the contract and alleges failure of the respondent to erect the pumping plant within a reasonable time or at all, and alleged that, by reason of such failure, his fruit crops for 1910 and 1911 were damaged in the total sum of $10,000. He alleged that the respondent had full knowledge of the extent of appellant's orchard, the purposes for which the pumping plant was to be used, the necessity of receiving water from this particular source, and the probable damage that would be caused by a failure to install the plant as required.

Respondent replied, putting in issue material allegations of the counterclaim, and further alleging that the pump referred to in the contract was one of special manufacture and had to be manufactured after the contract was executed; that

the delay, if any, was caused by an accident occurring on the railroad at Wenatchee, in which the plant was injured. The appellant replied, putting in issue the affirmative matter of the answer to appellant's counterclaim.

The cause was brought on for trial before a jury, and after the evidence was all in, including the rebuttal evidence of respondent, the court, on motion of respondent, discharged the jury and rendered a judgment in favor of respondent on the contract for the full amount unpaid thereon, including interest and costs, and dismissed the counterclaim of appellant. Appellant unsuccessfully moved for a new trial.

The evidence in the case shows that the goods were shipped by steamboat from Wenatchee up the Columbia river and discharged on a gravel bank near Wagner's ranch, at what is known as Wagner's landing. The machinery was shipped at different times. Part of it arrived at Wagner's landing about June 10, 1910, but the pump frame, a large steel frame about thirty feet long intended to be set in the well or pit and which had been injured in the wreck at Wenatchee, did not arrive at Wagner's landing until about July 17, 1910. It also was unloaded from the steamboat upon this gravel bar, between ordinary high and low water mark, and never thereafter moved by either party. The well on Wagner's ranch, where this machinery was required, was distant about 250 or 300 feet up a very steep and rocky bank from the place where the pump and machinery were deposited. The contract provided that the machinery was to be installed complete on appellant's ranch, and it also provided that the first payment of $400 was to become due when the machinery was delivered "on your ground." The evidence shows that the pump frame alone weighed 2,785 pounds. There was considerable other machinery and apparatus.

Respondent contended, and the trial court took the view, that the delivery as made was a substantial delivery, being at or near respondent's ranch; and that, in case it was not, the failure of appellant to object to such delivery waived ex-

act compliance with the terms of the contract. Under the contract as made by the parties, this machinery was to be installed and placed in the well by respondent. In referring to delivery upon the ground of appellant, the contracting parties could have provided that the first installment of the purchase price should be made upon delivery at the landing of the boat company on the bank of the Columbia river at Wagner's landing, or near Wagner's land. But their contract did not so provide. In fact, it was specific that it was to be installed as a pumping outfit upon appellant's land, and must, therefore, have necessarily contemplated that it was to be installed where it could be used, that is to say, in appellant's well, and that the first installment should be paid when delivered upon appellant's land.

Respondent, on the other hand, contends that the strict compliance with this feature of the contract was prevented by reason of the failure of appellant to put in a foundation, as required by the contract. The evidence of appellant is that he dug the pit and trench; that he procured a supply of timbers for the purpose of building the foundation at the pit or well; that respondent failed to furnish any definite plans for the construction of the foundation; and that, if definite plans had been furnished, or if respondent had proceeded with the installation of the pump, he could have built the foundation in one day.

A paper was introduced in evidence as respondent's exhibit 5, upon the supposition that it was the plan for the foundation. Respondent's principal witness later admitted, however, that it was merely given to appellant to show the connection between the steel frame which respondent was furnishing and the wood frame which appellant was to erect. This was a mere pencil drawing or a sketch of the proposed structure. There were no details upon it and it was not drawn to scale. The respondent's principal witness excuses his failure to deliver plans for the foundation upon the ground that appel-

lant said he did not require plans; that he was a carpenter and bridge builder, and that he could build a foundation. Appellant, however, denied this, and testified that the plans were so incomplete that, although he was a carpenter and bridge builder of considerable experience, he was unable to complete the foundation without additional information, for the reason that the plan contained no scale and nothing to indicate the size or the distance apart of the timbers. He was required by the contract to build upon plans to be furnished by respondent. This, of course, meant intelligible and workable plans. In fact, upon every issuable fact involved in the case, except that a written contract was entered into between the parties and that nothing but $130 had been paid, there was a conflict of evidence between them.

Respondent, however, insists that, as to the law of the case, a substantial performance was shown by undisputed testimony, and that the modern rule permits recovery without a strict and literal performance if there has been a substantial performance and the contractor has attempted in good faith to perform the contract; citing 3 Page on Contracts, § 1385, and *Taylor v. Ewing*, 74 Wash. 214, 132 Pac. 1009.

But the same authority—Page—contains a further statement of the law:

"If a contract has been performed substantially and deviations from the contract have been made, but not willfully or in bad faith, the party so performing can recover the contract price, less the amount of damages caused by such deviation. The amount of such damages is usually the expense of completion according to the contract."

In the case at bar, respondent sued to recover, and was permitted to recover, the entire amount of the contract according to his own theory, upon mere substantial performance of the contract and not literal performance; while appellant insists that the delay was wilful and inexcusable on the part of respondent.

Respondent further insists that appellant, by his acts and conduct, waived complete performance of the contract, and that, therefore, it is entitled to recover upon the entire contract. There is nothing whatever in the evidence that we can see by which it can be rightfully contended that appellant waived the strict performance of the contract. On the contrary, there is evidence that, at numerous times, he requested to know when respondent would complete its installation of the pumping plant. This, to be sure, is contradicted, but that merely constitutes a conflict in the evidence and was for the jury to pass upon. He did not consider that the machinery had been delivered to him according to the contract; and it would seem that, under some circumstances and under some contracts, the delivery of goods, wares, or merchandise at a distance of two hundred and fifty or three hundred feet down a very steep hill would be practically equivalent to delivery, under other contracts and under other circumstances and conditions, of goods, wares, and merchandise at a wharf or landing a great distance away. If he moved this heavy machinery he did so at some risk of injuring it, and also he would then have been considered as accepting such delivery, and that before installation by respondent. We are, therefore, satisfied that the questions of whether or not there had been a substantial delivery of the machinery, and of whether or not substantial delivery thereof had been waived by any acts or conduct of appellant, either should have been resolved as questions of law in favor of appellant, or were questions of fact to be determined by the jury. We consider that under the conditions and circumstances pleaded and shown, they were questions of fact.

Another question is raised by appellant which we consider necessary to pass upon. It is contended that the court erred in refusing to permit appellant to introduce evidence showing that the question of the time of delivery and installation was discussed and considered by the parties at the time of making the contract, for the purpose of showing what was a reason-

able time within which to make delivery. It was contended by appellant, and attempted to be shown on the trial below, that it was considered by the parties that the delivery and installation of the pumping plant should be within thirty days, or by May 20, 1910, or, at any rate, in time for the irrigation of appellant's orchard within June, July or August of that year.

The contract is complete upon its face, lacking only the element of time, and parol testimony that a particular time was expressly agreed upon is generally excluded under the familiar rule that parol evidence of a prior or contemporaneous oral agreement is not competent to vary, alter, contradict, or add to the terms of a written contract. Numerous cases are cited to sustain this proposition, among others that of *Smith Sand & Gravel Co. v. Corbin,* 81 Wash. 494, 142 Pac. 1163. In that case it was said, in consonance with the weight of authority, that:

"It is elementary that if a contract specifies no time, the law implies that it shall be performed within a reasonable time. 9 Cyc. 611. It is also well established that the legal effect of a written contract, though not stated in terms in the writing itself, but left to be implied by law, can no more be contradicted, changed or explained by extrinsic evidence, than if the legally implied effect had been expressed in the written terms. 'The legal effect of a written contract is as much within the protection of the rule which forbids the introduction of parol evidence as its language,' " citing many cases.

The situation here, therefore, is that, inasmuch as the contract was silent as to the time of performance, the law implies a reasonable time to perform the contract, and what was or is a reasonable time under the circumstances, and within the contemplation of the parties, was a question of fact to submit to the jury upon competent evidence, and not a question of law. The case cited by respondent, *Kleeb v. Long-Bell Lumber Co.,* 27 Wash. 648, 68 Pac. 202, to the

point that it is a question of law for the court to determine what was a reasonable time, is not in point here, for the reason that in that case it was merely held by the court that a reasonable time had elapsed for the defendant to object to the quality or manner of delivery of the lumber, owing to the peculiar circumstances in that case. There are frequently cases where the court may safely rule that the time elapsed wherein a party should do or should not do a certain thing is unreasonable, for the reason that, under some circumstances and conditions, the passage of an unreasonable length of time must be conclusively presumed against the party. In general, however, the question of what is a reasonable time is one of fact and to be determined as such.

For these reasons the judgment is reversed, and the cause remanded for new trial.

MORRIS, C. J., BAUSMAN, PARKER, and MAIN, JJ., concur.