[No. 19253. Department Two. October 8, 1925.]

J. H. COLLINS, *Appellant,* v. H. C. JOHNSON, *et al.,*
*Respondents.*[1]

BANKS AND BANKING (26)—SPECIAL DEPOSITS—PREFERRED CLAIMS —RIGHT OF RECOVERY. Where municipal warrants, deposited with a bank for safe keeping, were unlawfully converted by the bank into cash and credited in its favor, the amount realized thereon by the bank constitutes a trust fund which the depositor may recover as a preferred claim, on the insolvency of the bank, upon sustaining the burden of following the trust by proof that the sum realized augmented the bank's assets, and that more than that amount of cash was on hand at the time of the bank's insolvency.

SAME (16)—DEPOSITS—TRUST FUNDS—WRONGFUL USE BY BANK— RATIFICATION — EVIDENCE — SUFFICIENCY. In such a case, the depositor's acquiescence and ratification of the bank's use of the trust deposit is not shown by a letter which was explained to have reference to other warrants which the depositor had sold to the bank and for which he had received credit.

Appeal from a judgment of the superior court for Stevens county, French, J., entered November 18, 1924,

[1]Reported in 239 Pac. 393.

in favor of the defendants, in an action to enforce a claim against an insolvent bank, tried to the court. Reversed.

*Wentz & Bailey* and *W. Lon Johnson*, for appellant.
*F. Leo Grinstead*, for respondents.

MITCHELL, J.—J. H. Collins was a general contractor and patronized the Colville Loan and Trust Company in the financing of his operations. In the early part of 1922, he placed with the bank for safe-keeping certain warrants issued to him by the city of Colville. They were kept in a pouch or package labeled in his name. About July, 1922, he went to Arlington, Washington, to perform a contract relating to a public improvement. In this contract he obligated himself to hold warrants that might be issued to him from time to time as the work progressed, to be later surrendered for bonds to be issued by the town. The bank knew of this obligation. A number of these warrants were sent to the Colville bank for safe-keeping. On account of insolvency, the bank closed its doors on August 1, 1923; whereupon Collins presented, in proper written form, to the supervisor of banking a demand that he be allowed a preferred claim against the bank's assets for certain of the Colville and Arlington warrants. The claim was rejected as a preferred one. He then brought this action, which resulted in his recovering the Colville warrants, and a judgment as a common creditor only as to the Arlington warrants. He has appealed, and insists that he is entitled to a judgment as a preferred creditor to the amount of the Arlington warrants.

It appears that, in November, 1922, the appellant received Arlington warrants numbers 60 to 69, which he immediately sent to the bank for safe-keeping, hav-

ing made an assignment to the bank of all the balance due to be paid by warrants issued by the town of Arlington. The purpose of the assignment, as was known to the parties, was to enable the bank to receive the warrants directly from the town of Arlington without the immediate intervention of Collins, who it appears was also performing public contracts at other places. After receiving these warrants, the bank received from the town of Arlington on the Collins contract warrants 70 to 79. Afterwards the bank gave a written instrument to Collins reciting as follows: "Received of J. H. Collins the following warrants for safe-keeping, with the Colville Loan and Trust Company," and containing a list of Arlington warrants, including those involved in this action. It may be stated generally that all of the Arlington warrants were accounted for, other than those numbered 73 to 78, inclusive, $1,000 each, which are the basis of this appeal. Some of those accounted for were returned to Collins by the liquidator of the bank's affairs after the bank closed its doors.

It appears that, about March, 1923, warrants 73 to 78 were sent by the Colville bank to the National City Bank of Seattle, and that the Colville bank received credit therefor in the sum of $6,000. This was done without the knowledge or consent of Collins, who knew nothing whatever of it until after the Colville bank was taken over by the supervisor of banking. These warrants were left with the Colville bank for safe-keeping, to be held and later exchanged for Arlington bonds to be issued. They were intrusted to the bank for that purpose. Instead of being so kept, they were converted by the bank into cash or a credit in its favor, it appearing that the balance in favor of the Colville bank with the National City Bank of Seattle, upon the receipt of these six warrants, was $13,522.02. It is shown by the testimony that more than $6,000 of this

credit was drawn out, before the Colville bank closed its doors, by drafts on the National City Bank of Seattle purchased by customers of the Colville bank. Thus these warrants or their substitute have been traced to the bank's assets which were taken over by the state authorities. The money was the money of Collins, as were the warrants for which the money was a substitute, and the balance in the bank, sufficient at all times after the bank used the warrants to cover the amount, may be charged with the trust.

The situation is similar to that in the case of *Brennan v. Tillinghast,* 201 Fed. 609, wherein the circuit court of appeals said:

"It is undisputed that the proceeds of the sale of Brennan's stock, wrongfully converted by the Ironwood Bank to its own use, constituted a trust fund, which did not lose this character when mingled with other moneys of the bank, and that Brennan was entitled to recover the amount thereof as a preferred claim, if, and to the extent that, he sustained the burden of proof of tracing this money, either in its original shape or in a substituted form, into the moneys which came into the hands of the receiver as part of the assets of the bank. *Peters v. Bain,* 133 U. S. 670, 693, 10 Sup. Ct. 354, 33 L. Ed. 696; *Board of Commissioners v. Strawn* (C. C. A. 6) 157 Fed. 49, 54, 84 C. C. A. 553, 15 L. R. A. (N. S.) 1100; *In re Brown* (C. C. A. 2) 193 Fed. 24, 29, 113 C. C. A. 343, affirmed *sub nom. First National Bank of Princeton v. Littlefield,* 226 U. S. 110, 33 Sup. Ct. 78, 57 L. Ed. 145; *Empire State Surety Co. v. Carroll County,* (C. C. A. 8) 194 Fed. 593, 604, 114 C. C. A. 435, and cases cited."

Without quoting from, but relying on, the modern modification of the rule as announced in the case of *Northwest Lumber Co. v. Scandinavian-American Bank of Seattle,* 130 Wash. 33, 225 Pac. 825, and cases therein cited, we think it must be held that the Arlington warrants 73 to 78, inclusive, and the money into

which they were converted by the bank, were each trust property, and that the real owner may, under the circumstances of this case, reclaim it from the general mass with which it was commingled and passed into the hands of the respondents.

Some argument is made on behalf of the respondents that, about ninety days prior to the failure of the bank, the appellant had knowledge that the warrants now in question had been used by the bank in its dealings, and that he acquiesced in and ratified the same. But we do not so understand the evidence. A statement in a letter from the bank to the appellant, upon which the claim of acquiescence and ratification is based, was readily and satisfactorily explained by the appellant, to the effect that he understood the statement in the letter of the use of some of the warrants referred to certain of the Arlington warrants that he had sold to the bank and received credit for, and that it in no way referred to the six warrants involved in this appeal, the use of which by the bank was at no time known to the appellant until some days after the bank failed, as hereinbefore stated.

That portion of the judgment appealed from is reversed, and the cause is remanded with directions to the trial court to enter a judgment as to the six warrants referred to in favor of the appellant as a preferred claim.

TOLMAN, C. J., MACKINTOSH, HOLCOMB, and FULLERTON, JJ., concur.