[No. 24727.   Department Two.   January 11, 1934.]

AMERICAN EXPRESS COMPANY, *Respondent*, v. HOWARD H. HANSEN, *as State Supervisor of Banking, Appellant.*[1]

*Bausman, Oldham, Cohen & Jarvis* and *Perry R. Gershon,* for appellant.

*Kahin & Carmody* and *Orlo B. Kellogg,* for respondent.

HOLCOMB, J.—This appeal is from a judgment by the court below, after a trial to the court, establishing the priority of the claim of respondent against the assets of the American Exchange Bank, a state bank, which is now in the course of liquidation by the state supervisor of banking.

The case is here upon the findings, conclusions and judgment of the trial court, the facts being undisputed.

According to the facts found, respondent is engaged in the business of issuing travelers cheques, which are delivered to banks and trust companies for the pur-

[1]Reported in 28 P. (2d) 788.

pose of having such banks and trust companies sell the same to the public and remit the proceeds thereof to respondent, charging a fee therefor. The travelers cheques in question were delivered to the bank under the terms of a written instrument which reads:

"Received in trust from the American Express Company, Travelers Cheques of the American Express Company, as follows: [Description of cheques given]. The undersigned hereby agrees and undertakes:

"(1) To hold in trust for the American Express Company the said cheques until sold, and the proceeds thereof when sold, and the same shall at all times remain the property of the said American Express Company; (2) to observe the same care and protection in the custody of the said cheques as in the case of bearer securities of the undersigned; (3) to be fully responsible for the due issue of the said cheques; (4) to account to the American Express Company promptly for said cheques and for the proceeds received from the sale thereof; and (5) to notify the American Express Company promptly in case of theft or loss of said cheques."

The custom had grown up between respondent and the bank to the effect that the bank would sell the travelers cheques from time to time, place the proceeds of the sale in its general fund commingled with other assets of the bank. The bank would make no entry on its books in favor of respondent, but thereafter, periodically, would determine the amount of the sales and forward to respondent its cashier's check in favor of respondent which represented the proceeds of the sale. The court found:

"Such procedure of collection and remittance was in accordance with the understanding of and custom between the plaintiff and the bank."

On December 11, 1931, the bank sold travelers cheques to the following persons and in the following amounts:

| | |
|---|---|
| Grace Lowe | $300.00 |
| Evelyn Greenway | 800.00 |
| L. A. Buchanan | 300.00 |
| | $1400.00 |

Grace Lowe and Evelyn Greenway presented to the bank, in exchange for the travelers cheques, their own personal checks drawn on the Exchange Bank, while Buchanan, the other purchaser, paid for his travelers cheques by a check drawn by a relative upon the Exchange bank. The bank debited the accounts upon which these respective checks were drawn, but made no entry of any kind in favor of respondent. Some time during the afternoon of December 11, the bank drew a cashier's check payable to the order of respondent in the sum of $1,403.05, representing the proceeds of the sale of the above mentioned travelers cheques. This was next to the last cashier's check ever issued by the bank.

At all times on and since December 11, 1931, the bank was insolvent. Notwithstanding that fact, late in the afternoon of December 11, although it had closed its doors for the last time some two hours before, it mailed the above mentioned cashier's check to respondent, which received it about nine o'clock the next morning, and was immediately advised that the bank had been taken over by the supervisor as an insolvent banking institution and was not open that day.

The court further found that the bank at all times had on hand more than sufficient to cover the transaction in question and had at the time it was taken over by the supervisor for liquidation.

The court also found and concluded from the facts that respondent had

"Traced the proceeds of the sale of the said travelers' checks into the assets of the American Exchange

Bank in the hands of the defendant and to a preferred and prior claim against the corporate assets.''

Respondent claimed that it was entitled to receive the proceeds of the sale of the above mentioned travelers cheques out of the assets of the bank. The supervisor rejected the claim of respondent, which, within the time limited by law, brought this action.

Respondent bases its right to recover upon the facts that the funds of the failed bank, to the extent necessary to cover the proceeds of the sale of the travelers cheques in question, was a trust fund for the benefit of respondent; and also relies upon express statutory enactments in our bank collection code, Rem. Rev. Stat., § 3292-1 to § 3292-13, inclusive. The particular statutory provisions relied upon by respondent are these:

Section 3292-1, which reads:

''That for the purposes of this act:

''  .  .  .  .  .  .  .  .  .  .

''(b) Item. The term 'item' means any check, note or other instrument providing for the payment of money.''

Section 3292-13, *supra,* omitting matters obviously irrelevant, is:

''  .  .  .  when a drawee or payor bank has presented to it for payment an item or items drawn upon .  .  .  such bank and at the time has on deposit to the credit of the  .  .  .  drawer an amount equal to such item or items and such drawee or payor shall fail or close for business  .  .  ., after having charged such item or items to the account of the  .  .  . drawer thereof  .  .  .  but without such item or items having been paid or settled for by the drawee or payor either in money or by an unconditional credit given on its books or on the books of any other bank, .  .  ., the assets of such drawee or payor shall be impressed with a trust in favor of the owner or owners of such item or items for the amount thereof,  .  .  .

and such owner or owners shall be entitled to a preferred claim upon such assets, irrespective of whether the fund representing such item or items can be traced and identified as part of such assets or has been intermingled with . . . other assets of such failed bank.''

Appellant insists that the bank collection code cannot apply, contending that the checks by the purchasers of the travelers cheques were, by mutual understanding and custom, the property of the bank; that respondent merely had the right to a periodical accounting and payment by the bank. It further asserts that the word ''owner,'' as used in the statute, definitely refers to the party who owned the particular item at the time of presentment to the bank, and in this case the parties were Lowe, Greenway and Buchanan; that the owners of those items were fully paid and are not complaining.

If there be any question on the second proposition relied upon by respondent, we cannot see that there can be any question on its first reliance.

Unlike most of the cases relied upon by appellant, in the instant case the rights of the parties have been carefully specified by a written declaration of trust. It was agreed in writing between them that the moneys received for the purchase of travelers cheques would be held in trust for respondent; that the travelers cheques received from respondent by the bank *and the proceeds thereof* would be held in trust for respondent, and at all times remain its property.

It is to be noted that the bank undertook, not merely to hold the checks in trust until sold, but also the proceeds thereof when sold, and that the same should at all times remain the property of respondent.

It is too well settled in this state to require the citation of cases that a trustee owes to the *cestui que*

*trustent* the highest degree of good faith, diligence and integrity.

It is to be borne in mind that the trial court found that the bank was insolvent at the time the travelers cheques were issued, the money received therefor, and this cashier's check issued and sent to respondent. Within a few hours thereafter, the bank was declared insolvent by the state supervisor, and has ever since so remained.

The trial court also found that respondent had traced the proceeds of the sale of the travelers cheques into the assets of the bank, and that the bank had at all times more than sufficient funds to cover the claim of respondent for the total amount of the travelers cheques.

This court long ago aligned itself with the modern authorities and the sounder view, in declaring that the trust funds are recoverable where an equal amount in cash remained. continuously in the bank until the suspension and passed to the receiver. *Carlson v. Kies,* 75 Wash. 171, 134 Pac. 808, 47 L. R. A. (N. S.) 317.

This declaration has been repeatedly reaffirmed. *State ex rel. Titlow v. Centralia,* 93 Wash. 401, 161 Pac. 74; *Rugger v. Hammond,* 95 Wash. 85, 163 Pac. 408; *Heidelbach v. Campbell,* 95 Wash. 661, 164 Pac. 247; *In re Central Bank & Trust Co. v. Ritchie,* 120 Wash. 160, 206 Pac. 926; *Raynor v. Scandinavian-American Bank,* 122 Wash. 150, 210 Pac. 499, 25 A. L. R. 716; *Pacific Building & Loan Association v. Central Bank & Trust Co.,* 127 Wash. 524, 221 Pac. 313; *Northwest Lumber Co. v. Scandinavian-American Bank,* 130 Wash. 33, 225 Pac. 825, 39 A. L. R. 922.

In the last cited case, most of our former cases and many outside cases were reviewed, and if any were distinguishable, were distinguished.

In the *Raynor* and *Northwest Lumber Co.* cases, *supra,* we held that an augmentation of the gross assets is sufficient.

This case is governed by the rule of decision in this state rather than any which may be variant in outside jurisdictions.

The following of our cases, cited by appellant, all vastly differ from the facts and conditions in this case: *Bowman v. First National Bank,* 9 Wash. 614, 38 Pac. 211, 43 Am. St. 870; *Hallam v. Tillinghast,* 19 Wash. 20, 52 Pac. 329; *Norris v. China Traders' Insurance Co.,* 52 Wash. 554, 100 Pac. 1025; *Old National Bank v. Gibson,* 105 Wash. 578, 179 Pac. 117, 6 A. L. R. 247; *Zimmerli v. Northern Bank & Trust Co.,* 111 Wash. 624, 191 Pac. 788, 17 A. L. R. 192; *Pacific Commercial Co. v. Northwestern Fisheries Co.,* 115 Wash. 608, 197 Pac. 930; *Collins v. Johnson,* 136 Wash. 256, 239 Pac. 393; *Citizens State Bank v. Spokane & Eastern Trust Co.,* 143 Wash. 9, 254 Pac. 238; *Tsuji v. Moody,* 173 Wash. 376, 23 P. (2d) 403.

Inasmuch as there was here an express written contract creating the trust and the trust fund, it is a stronger case in support of recovery on a preferred claim in favor of respondent than any we have ever had before us.

The judgment must be and is affirmed.

BEALS, C. J., TOLMAN, GERAGHTY, and BLAKE, JJ., concur.