[No. 25144. *En Banc.* January 25, 1935.]

CHAS. McGREGOR, *Respondent,* v. FIRST FARMERS-
MERCHANTS BANK & TRUST COMPANY
*et al., Appellants.*[1]

[1]Reported in 40 P. (2d) 144.

*Geo. C. Ellsbury* and *Perry R. Gershon,* for appellants.

*W. E. Bishop,* for respondent.

STEINERT, J.—Plaintiff brought this action to establish a preferred claim against the general funds in the possession and under the control of the state supervisor of banking, then liquidating the affairs of an insolvent bank. Upon a trial before the court, findings and conclusions were made establishing the claim as preferred, and judgment was entered accordingly. The defendants have appealed.

The facts, as shown by the clear preponderance of the evidence and as found by the court, are these: On October 31, 1932, Coffman-Dobson Bank & Trust Co., of Chehalis, issued its cashier's check in the sum of one thousand dollars payable to the order of respondent. On November 16, 1932, respondent endorsed and presented the check to First Farmers-Merchants Bank & Trust Co., of Centralia, requesting payment thereof in bills in the denomination of fifty dollars. The bank's cashier, Harold Gingrich, advised respondent that he then had on hand only five hundred dollars in bills of that denomination, but offered to pay the remaining five hundred dollars in bills of five and ten-dollar denominations, which offer respondent declined. The cashier then asked respondent to accept five hundred dollars in fifty-dollar bills, and deposit the remaining five hundred dollars in the Centralia bank. This the respondent emphatically declined to do, because he felt that the Centralia bank was an unsafe place for

deposit. It was then agreed between respondent and Gingrich, the cashier, that respondent should take five hundred dollars in fifty-dollar bills, and that the bank should hold the remaining sum of five hundred dollars and exchange it for fifty-dollar bills as soon as convenient, and promptly notify respondent when the exchange had been made.

Respondent thereupon requested a receipt for the five hundred dollars represented by the uncollected portion of the thousand-dollar check. In response to the request, Gingrich drew a cashier's check which read as follows:

"First Farmers-Merchants Bank & Trust Co. 98-44
FIRST GUARANTY BANK 98-44-12
Centralia, Wash. Nov. 16, 1932, No. 25620
"Pay to the order of Chas McGregor................$500.00
"Exactly $500 & 00 Cts.
"H. D. GINGRICH,
CASHIER'S CHECK A. Cashier."

This check was then handed to respondent by Gingrich, with the statement that it "was the same as a receipt," or that it "would answer the same purpose as a receipt." Respondent did not question the statement, but took the cashier's word for it.

The Centralia bank collected the thousand-dollar check by taking credit therefor on the books of the Chehalis bank. It did not, however, notify respondent that it had obtained the remaining fifty-dollar bills, nor did respondent call at the Centralia bank during the short time that it continued to function as a going concern.

On December 3, 1932, the Centralia bank closed its doors, and its affairs and assets were subsequently taken over by the supervisor of banking. In due time, respondent presented the five-hundred-dollar cashier's check held by him to the supervisor of bank-

ing, as a preferred claim. The supervisor allowed it as a general claim, but denied it preference. This action was then instituted.

If the case be considered simply from the standpoint of the facts which we have just outlined, there could be little doubt, we think, of respondent's right to recover. The difficulty arises when we come to apply the law to the facts. The first question necessary to be determined is whether, under the parol evidence rule, the principal facts on which respondent relies and which the court found may be considered at all; for, if they cannot, then respondent would not be entitled to recover according to his claim.

We will consider this question from two viewpoints: (1) From the viewpoint of the legal effect of the issuance by the bank and the acceptance by respondent of the cashier's check for five hundred dollars, and (2) from the viewpoint of the deposit of the thousand-dollar check, in whole or in part, by respondent with the bank.

A few observations relative to the parol evidence rule may first be made. The rule, as generally and somewhat tersely stated, is that parol evidence cannot be received to contradict, vary, add to or subtract from the terms of a written instrument. The actual rule, however, as it is usually stated, is that all conversations and parol agreements between the parties prior to a written agreement are so merged therein that they cannot be given in evidence for the purpose of changing the contract or showing an intention or understanding different from that expressed in the written agreement. 3 Jones on Evidence (2d ed.), p. 2699; 1 Greenleaf on Evidence (16th ed.), § 275; 5 Wigmore on Evidence (2d ed.), § 2425; Taylor on Evidence (11th ed.), § 1132.

The parol evidence rule is not a rule of evidence,

but is a rule of substantive law. *Andersonian Inv. Co. v. Wade,* 108 Wash. 373, 184 Pac. 327; 3 Jones on Evidence (2d ed.), § 1482, p. 2695; 5 Wigmore on Evidence (2d ed.), § 2400, p. 236. Hence, evidence properly falling within the inhibition of the rule does not become admissible merely because it has probative value or is not objected to. The rule applies not only to agreements whose terms are fully expressed in writing, but also to written agreements wherein certain obligations are implied by law. *Bryan v. Duff,* 12 Wash. 233, 40 Pac. 936, 50 Am. St. 889; *Allen v. Chambers,* 13 Wash. 327, 43 Pac. 57; 10 R. C. L. § 240, p. 1046. Or, expressed somewhat differently, the rule applies not only to the letter of the written document, but also to its legal effect. *Smith Sand & Gravel Co. v. Corbin,* 81 Wash. 494, 142 Pac. 1163; *United Iron Works v. Wagner,* 89 Wash. 293, 154 Pac. 460, 3 Jones on Evidence, p. 2698; 4 Page on Contracts, § 2148.

Certain exceptions to the rule are as firmly established as the rule itself. In fact, they may be said to be a part of the rule. We mention only one or two of the exceptions, which we conceive to be applicable here. One is that, where a parol contemporaneous agreement is the inducing and moving cause of a written contract, or where a parol agreement forms part of the consideration for a written contract, and it appears that the written contract was executed on the faith of the parol contract or representations, then such evidence is admissible. 3 Jones on Evidence (2d ed.), § 1492. Another exception is that parol evidence is admissible to show that a note or other written instrument, absolute in form, though manually delivered to the payee, was not to become a binding obligation except upon the happening of a certain event. *Dickson v. Protzman,* 123 Wash. 247, 212 Pac.

249; *Blaine v. Darwin,* 160 Wash. 327, 331, 295 Pac. 131.

 Applying these rules, with their exceptions, to the facts with reference to the five-hundred-dollar check, we analyze the situation as follows: The check was not a receipt, but a negotiable instrument. Rem. Rev. Stat., § 3392 [P. C. § 4072]. It was essentially the promissory note of the bank to pay to respondent, or his order, on demand, the sum of five hundred dollars. On its face, it was a complete contract in itself, even though some of its obligations were implied by law. By its terms, express and implied, it created, as between the bank and respondent, the relationship of debtor and creditor, not that of trustee and *cestui que trust.* It could not, therefore, be contradicted or varied by parol evidence unless it came within one of the exceptions to the rule.

But it clearly appears from the evidence that the acceptance of the check was induced by a contemporaneous parol agreement which went to the very heart of the consideration. Though the check was absolute in form and was manually delivered, it was given and accepted upon the express condition that it was to represent a fund that was at all times to belong to respondent. As to five hundred dollars of the proceeds to be derived from the collection of the thousand-dollar check, the bank was not to mingle that amount with its general funds, but was to convert it into fifty-dollar bills to be held for respondent. The situation was exactly the same as though respondent had left with the bank five hundred dollars in silver or in small denominations of currency to be converted into ten bills of fifty dollars each and held for him in its converted form. Certainly, in the latter instance, it would be considered as a trust fund.

The facts of the instant case present only one addi-

tional feature. It was first necessary to collect the thousand dollars evidenced by the Chehalis bank check, in order to segregate the portion then belonging to the bank from that belonging to respondent. But we cannot see that that feature makes the slightest difference in the relationship already created and then existing between the parties. The mere delivery of the check did not, under the attendant circumstances, import an obligation on the part of respondent to accept it as immediate payment of the five hundred dollars which he had entrusted to the bank. The terms of the check were not, under the peculiar circumstances, inconsistent with the contemporaneous agreement between the parties. The parol agreement was separate and distinct from the agreement implied by the check. Although an agreement between parties is reduced to writing, the law does not merge into the writing prior or contemporaneous agreements which are distinct, valid, and not in conflict with the writing. 3 Jones on Evidence (2d ed.), § 1440, p. 2712. The contemporaneous agreement did not, in this instance, become merged in the agreement implied by the check.

Considering now the question from the viewpoint of the deposit of the thousand-dollar check, in whole or in part, by respondent, we come to the same conclusion. A deposit made in a bank is ordinarily a general one, but it may be made a special deposit at the instance of the depositor. When a bank accepts it as a special deposit, it becomes a trustee for the depositor, and holds the money subject to the trust. *Carlson v. Kies,* 75 Wash. 171, 134 Pac. 808, 47 L. R. A. (N. S.) 317. Where money or other property is deposited with the understanding that the particular money or thing is to be returned to the depositor or is to be used for a specifically designated purpose, the deposit is special, and the bank becomes a trustee for

the depositor. *Kies v. Wilkinson,* 101 Wash. 340, 172 Pac. 351; *Hitt Fireworks Co. v. Scandinavian Am. Bank,* 114 Wash. 167; 195 Pac. 13, 196 Pac. 629; *Raynor v. Scandinavian Am. Bank,* 122 Wash. 150, 170, 210 Pac. 499, 25 A. L. R. 716.

When respondent deposited the thousand-dollar check with the bank, it was upon the express understanding that five hundred dollars thereof would be at once paid to respondent in fifty-dollar bills, and that the remainder was to be converted into similar denominations as soon as the cashier could do so, the same to be turned over to respondent. The money was to be used for a specifically designated purpose; and the proceeds, converted into a particular form, were to be held for, and turned over to, respondent. As between the parties, the cashier's check operated simply as security for performance by the bank. It was competent to show what the real contract between the parties was, so long as it did not contradict or impeach the terms of the writing. The agreement was to procure ten fifty-dollar bills and to pay, or deliver, them to respondent, and the check evidenced the bank's obligation to pay the ultimate amount. The two, therefore, were not inconsistent, but harmonized with each other. Of course, it was incumbent upon respondent to establish the parol agreement by clear and satisfactory evidence, but the record discloses a clear preponderance and satisfactory showing that such was the agreement.

Appellant finally contends that there was no trust "res," or subject matter of a trust, because there was nothing tangible on which a trust could be impressed. The argument appears to be that, since respondent was unable to identify any particular fund and trace it into the hands of the supervisor, he was; therefore, precluded from a right of preference. But

as we view it, the subject matter of the trust was the original thousand-dollar check. The respondent did not *sell* it to the bank. The latter took it only in a fiduciary capacity. It paid five hundred dollars of the amount at once, as was agreed, and the remaining five hundred dollars it kept for a designated purpose. The check and its proceeds were, therefore, impressed with a trust. The fact that the bank violated its trust and commingled a portion of the money with its own funds, does not dispel the trust character of the arrangement.

Respondent having established by the evidence that the gross assets of the bank were augmented by the amount of the deposit, the money could be followed into the hands of the supervisor. *Pacific Bldg. & Loan Ass'n v. Central Bank & Trust Co.,* 127 Wash. 524, 221 Pac. 313; *Collins v. Johnson,* 136 Wash. 256, 239 Pac. 393; *American Express Co. v. Hansen,* 176 Wash. 187, 28 P. (2d) 788.

Viewing the case from every angle presented, we believe that the respondent was entitled to have his claim established as a preferred claim.

The judgment is affirmed.

BEALS, TOLMAN, HOLCOMB, and GERAGHTY, JJ., concur.

BLAKE, J. (dissenting)—The ultimate facts upon which decision of this case must rest are as follows: Plaintiff owned a cashier's check, issued by Coffman-Dobson Bank & Trust Company, in the sum of one thousand dollars. He presented that check for payment to First Farmers-Merchants Bank & Trust Company. He received five hundred dollars in cash and a cashier's check for five hundred dollars. The cashier's check was in the words and figures following:

"First Farmers-Merchants Bank & Trust Co. 98-44
 Centralia, Wash., Nov. 16, 1932. No. 25620.
"Pay to the Order of Chas. McGregor................$500.00
 Exactly $500 & 00 Cts.
 H. D. Gingrich
"Cashier's Check A. Cashier."

In the ordinary course of business, First Farmers-Merchants Bank & Trust Company collected from Coffman-Dobson Bank & Trust Company one thousand dollars on the cashier's check issued by the latter. The proceeds of this collection went into the general funds of First Farmers-Merchants Bank & Trust Company. Nowhere in the records of that bank did there appear any record of deposit, special or otherwise, to the credit of plaintiff.

The real question in the case is whether parol evidence is admissible to vary the terms of the cashier's check issued by First Farmers-Merchants Bank & Trust Company. The majority hold that it is. But as I see it, that conclusion is arrived at only by ignoring the legal effect of the cashier's check and treating it as a mere receipt for money. Of course, if it is a mere receipt, its terms may be varied by parol evidence. But that is not what it is. It is a negotiable instrument—essentially a promissory note of First Farmers-Merchants Bank & Trust Company. Rem. Rev. Stat., § 3392 [P. C. § 4072]. In the absence of fraud, therefore, parol evidence is inadmissible to explain or vary its terms. *Gurney v. Morrison,* 12 Wash. 456, 41 Pac. 192; *Holt Manufacturing Co. v. Brotherton,* 91 Wash. 354, 157 Pac. 849; *Post v. Tamm,* 91 Wash. 504, 158 Pac. 91.

The prior negotiations of the cashier and McGregor having culminated in the issuance by the former, and acceptance by the latter, of the cashier's check, McGregor cannot now be heard to say that the transaction

was something different than that which the cashier's check bespeaks. 12 R. C. L. 295; *Sherman v. Sweeny,* 29 Wash. 321, 69 Pac. 1117; *Hubenthal v. Spokane & Inland R. Co.,* 43 Wash. 677, 86 Pac. 955; *Miller v. Spokane International R. Co.,* 82 Wash. 170, 143 Pac. 981; *Holt Manufacturing Co. v. Brotherton,* 91 Wash. 354, 157 Pac. 849; *Johnston v. Spokane & Inland Empire R. Co.,* 104 Wash. 562, 177 Pac. 810. In the last cited case, this court said:

"We have always held that a party whose rights rest upon a written instrument which is plain and unambiguous, and who has read or had the opportunity to read the instrument, cannot claim to have been misled concerning its contents or to be ignorant of what is provided therein."

The judgment should be reversed.

MILLARD, C. J., MAIN, and MITCHELL, JJ., concur with BLAKE, J.