[No. 13044-1-II.   Division Two.   November 4, 1991.]

TOYOTA OF PUYALLUP, INC., *Appellant*, v. LAWRENCE P.
TRACY, ET AL, *Respondents*.

*Harold T. Hartinger* and *Vandeberg & Johnson,* for appellant.

*Thomas A. Farrow,* for respondents.

MORGAN, J. — Toyota sued Tracy for the amount of a dishonored check, plus reasonable attorney's fees. The trial court awarded Toyota the amount of the check. It denied reasonable attorney's fees to Toyota, awarding them instead to Tracy. Toyota appeals the judgment but assigns error only to the award of attorney's fees to Tracy. We affirm the denial of fees to Toyota and reverse the award of fees to Tracy. We affirm the judgment in all other respects.

On July 7, 1986, Tracy took his car to Toyota for repairs to the engine, transmission, and parking brake. Toyota gave an oral estimate of $997. The final bill exceeded the estimate by $72. It came to $1,069.16, plus $83.39 tax, for a total of $1,152.55.

On August 20, 1986, Tracy picked up the car and gave Toyota a check for $1,152.55. He soon discovered that Toyota had repaired the engine, but not the transmission or brake. The next day, August 21, 1986, he took the car back. Toyota, without charge, repaired the brake and replaced the transmission pan gasket. This did not fix the transmission problem. Tracy then stopped payment on his check, and his bank dishonored it.

Toyota gave notice of dishonor as required by RCW 62A.3-520 and RCW 62A.3-522. It also contacted Tracy several times and offered to do further work on the trans-

mission. Tracy refused the offers and did not pay any part of the repair bill.

Toyota sued on the check.[1] The matter went to mandatory arbitration, and the arbitrator awarded Toyota the amount of the check ($1,152.55), its reasonable attorney's fees (in the arbitrator's opinion, $2,000 as of that time), and other incidental amounts. The total award was $3,384.63.

The arbitrator's award was not reduced to judgment because Tracy exercised his right to trial de novo in the superior court. After a bench trial, the court awarded Toyota the full amount of the check ($1,152.55), plus interest and statutory costs. It held that Toyota was not entitled to reasonable attorney's fees but that Tracy was. It set Tracy's fees at $2,500.

## I

On appeal, Toyota contends that it, not Tracy, should have been awarded reasonable attorney's fees.[2] Toyota's right to reasonable attorney's fees is governed by RCW 62A.3-515(1). That statute provides in pertinent part:

> [I]n the event of court action on the [dishonored] check the court, after such notice and the expiration of said fifteen days, shall award a reasonable attorneys fee . . .. This section shall not apply to any instrument which has been dishonored by reason of any justifiable stop payment order.

The only Washington case to construe RCW 62A.3-515(1) is *Northwest Motors, Ltd. v. James*, 57 Wn. App. 364, 788 P.2d 584, 798 P.2d 813 (1990), *review granted*, 116 Wn.2d 1006 (1991). In that case, James dropped his car off at the plaintiff auto repair shop in late May or early June. Later

---

[1] Subject to certain exceptions not pertinent here, RCW 62A.3-802(1)(b) provides that when an instrument taken for an underlying obligation is dishonored, an action "may be maintained on either the instrument or the obligation . . .." Thus, Toyota was entitled to sue on either the check or the underlying contract.

[2] Toyota appeals on the issue of whether it was entitled to $100 statutory damages, as well as on the issue of reasonable attorney's fees. The two issues involve identical considerations, however, because both are governed by RCW 62A.3-515(1). For convenience, we refer only to reasonable attorney's fees.

the same day, he and the owner of the shop talked by phone. The owner orally estimated that the repairs would cost $2,500 and take a few days. James did not request a written estimate.

The repairs were not completed until September 4. By then, James was angry about the delay and the bill, which came to about $3,500. He believed the amount of the bill should be $2,500, less an offset for inordinate delay. Several weeks earlier, in July, he had "formed the intent to tender a check in ostensible payment for the repairs in order to get his car back and to stop payment on the check if he thought the amount was unfair." 57 Wn. App. at 367. Thus, when he went to pick up his car on September 4, he "examined the bills and manifested his acceptance of the amount stated in them." 57 Wn. App. at 368. He wrote a check in that amount, which was accepted by the owner of the shop, then left with his car. Immediately thereafter, he stopped payment on the check and sent the shop a substitute check for $2,000. The shop refused to accept the substitute check and sued on the original one. The appellate court held that the stop payment order was not justifiable and that pursuant to RCW 62A.3-515(1) James owed the amount of the original check plus reasonable attorney's fees.

■ The first principle to be derived from *James* is that when a check is issued to satisfy the drawer's obligation on an underlying contract, whether the drawer owes on that contract, and in what amount, is to be determined by applying ordinary contract principles. Generally, a person is bound by his or her objective manifestations. *Dwelley v. Chesterfield*, 88 Wn.2d 331, 335, 560 P.2d 353 (1977). When James went into the car shop on September 4, he objectively manifested his agreement with the shop's bill, and the shop gave new consideration in the form of relinquishing its possessory lien against the car. *See* RCW 46.71-.040(2), .050. These manifestations had the legal effect of obligating James on a contract with the shop, the amount of the contract being the same as the face value of the check. Because he was bound by his objective manifestations, the

fact that he harbored a hidden subjective intent to dispute the shop's bill was legally insignificant.[3]

■ The second principle to be derived from *James* is that when a check is issued to satisfy the drawer's obligation on an underlying contract, a subsequent stop payment order will not be justifiable if at the time the order is issued the drawer is obligated on the underlying contract in an amount not less than the face value of the check. At the time when James issued his stop payment order, he was obligated on his underlying contract in an amount equal to the face value of his check. Therefore, his stop payment order was unjustifiable.

When ordinary contract principles are applied to the case at bar, the only possible legal conclusion is that on August 21, 1986, the date of the stop payment order, Tracy did not owe the entire bill of $1,152.55. According to the trial court's findings, Toyota agreed to repair Tracy's engine, brake and transmission for an estimated price of $997 and a final price of $1,152.55.[4] On August 20, 1986, when Tracy

---

[3]Also legally insignificant was whether the contract that was formed should be labeled an account stated, an accord and satisfaction, a new contract, or a bargained-for modification of a previously formed contract. The *James* court chose to label it as an account stated.

[4]Finding of fact 3 reads in part as follows:
On July 7, 1986 Lawrence P. Tracy delivered his 1983 Toyota Celica automobile to plaintiff Toyota of Puyallup, Inc. to make certain repairs to the engine, transmission and parking brake. . . . Toyota of Puyallup, Inc. subsequently gave him an oral and written estimate of $997.00, not including sales tax, to repair the engine of his automobile. It was not unreasonable for the defendant to believe that the transmission and brake would be repaired for the same price.
This finding is ambiguous. If emphasis is placed on the second sentence, it might mean that Toyota was contracting only to repair the engine for approximately $997. If emphasis is placed on the first and third sentences, it might mean that Toyota was contracting to repair the engine, brake and transmission for approximately $997.
To clarify the ambiguity, we look to the oral ruling of the trial judge. *Goodman v. Darden, Doman & Stafford Assocs.*, 100 Wn.2d 476, 481, 670 P.2d 648 (1983); *In re Meistrell*, 47 Wn. App. 100, 107, 733 P.2d 1004 (1987). He said:
Now, I do believe that an estimate was made, and I also believe, by the way, that Mr. Tracy had good reason to believe that the thousand-dollar estimate that was given him, $997.00 estimate that was given him, was going to

picked up his car and issued his check for $1,152.55, he was unaware that the transmission had not been fixed.[5] On August 21, 1986, after discovering that the transmission had not been fixed, he returned the car to Toyota. However, Toyota still did not fix the transmission.[6] Thus, when Tracy issued his stop payment order on August 21, Toyota's performance remained incomplete, and Tracy did not owe the entire $1,152.55 face value of his check.[7] *Evers v. Broadview*

---

repair a transmission, it was going to fix his motor, and it was going to probably take care of the adjustment on his brake.

Report of Proceedings, at 222-23. And later he said:

And I do think that Mr. Tracy had the right to believe that if he took it back that transmission would be made right without further payment because I think he had [*sic*] right to believe that that $997.00 covered the transmission.

Report of Proceedings, at 227.

We ascribe no significance to the fact that the court referred to Tracy's "right to believe", as opposed to the contract between the parties. The only way Tracy could have had a "right to believe" that $997 covered the transmission was if the dealings between him and Toyota included objective manifestations to that effect; and if there were objective manifestations to that effect, there was a contract to that effect. *Dwelley v. Chesterfield*, 88 Wn.2d 331, 560 P.2d 353 (1977).

[5]The court's findings of fact 5 and 6 state:

"5. On August 20, 1986[,] Lawrence Tracy issued and delivered to plaintiff Toyota of Puyallup, Inc., his check for the sum of $1152.55.

"6. On August 20, 1986[,] when Lawrence Tracy took delivery of his automobile[,] he discovered the transmission and brake had not been repaired."

[6]The court's findings of fact 7 and 8 state:

"7. The next day, on August 21, 1986, Lawrence Tracy returned his automobile to Toyota of Puyallup, Inc., which fixed the parking brake and replaced the transmission pan gasket. . . .

"8. The replacement of the transmission pan gasket did not fix the problem Lawrence Tracy was experiencing with the transmission of his automobile."

[7]The conclusion that Tracy did not owe the entire $1,152.55 when he issued the stop payment order is not inconsistent with the finding that he owed the entire bill at the time of trial. The trial court reasoned in two steps. First, it reasoned that even though Tracy did not owe the entire bill when he stopped payment, he had a legal duty to afford Toyota a reasonable opportunity to cure the defects in its performance. We express no opinion on whether Tracy really had such a duty, as that is not an issue on this appeal.

Second, it reasoned that after Tracy stopped payment, he rebuffed Toyota's repeated attempts to cure. According to the trial court, this amounted to a

*Dairy Co.*, 147 Wash. 570, 572, 266 P. 726 (1928); *United Iron Works v. Wagner*, 89 Wash. 293, 298, 154 P. 460 (1916); *Swenson v. Lowe*, 5 Wn. App. 186, 189, 486 P.2d 1120 (1971); Restatement (Second) of Contracts §§ 347, 349 (1981); L. Simpson, *Contracts* §§ 187, 195 (2d ed. 1965).

Because Tracy did not owe the entire face amount of his check as of the date of his stop payment order, this case is the converse of *James*. Whereas the court in *James* held that a stop payment order is not justifiable if at the time it is issued the underlying contract obligates the drawer to pay the face amount of the check, the question presented here is whether a stop payment order is justifiable if at the time it is issued the underlying contract does not obligate the drawer to pay the entire face amount of the check. Analogizing to the reasoning of *James*, we answer in the affirmative. Just as a drawer should be liable for the consequences of stopping payment on a check issued to pay an amount for which he or she is contractually obligated, he should not be liable for the consequences of stopping payment on a check issued to pay an amount for which he or she is not contractually obligated. When a check has been mistakenly issued to pay an amount not owed, the drawer

---

breach of duty, and the breach caused him to owe the entire bill at the time of trial, even though he had not owed all of it at the time he stopped payment on the check. Thus, the trial court said in its oral ruling:

> The real question of whether or not I'm going to direct that a judgment be taken against the defendant herein, however, in the amount of the repair comes down to a simply [*sic*] principle in law, and that is the *Peter Pan* case [*Peter Pan Seafoods, Inc. v. Olympic Foundry Co.*, 17 Wn. App. 761, 565 P.2d 819 (1977), *review denied*, 90 Wn.2d 1015 (1978)], essentially, and that is: The obligation that an individual has to allow the opportunity to cure, and was that opportunity reasonably provided.
>
> . . . Did he [Tracy] give [Toyota] an opportunity to repair? He brought the automobile back [on August 21, 1986] . . .. [O]bviously, he did give an opportunity to repair.
>
> Was that a reasonable opportunity?

Report of Proceedings, at 226-27. The court ultimately answered that even though Tracy had given Toyota an opportunity to cure, the opportunity was not a reasonable one. It then concluded by saying, "And for that reason, I am granting judgment to the plaintiff in the amount of the original repair bill of $1,152.55. . . ." Report of Proceedings, at 227-28.

should not be precluded from issuing a stop payment order. Rather, the drawer should have that option, subject to the risk of being assessed reasonable attorney's fees if a court later determines that the drawer, on the date of the stop payment order, was contractually obligated to pay the amount for which the check was written.

Applying our reasoning to the present case, we hold that Tracy's stop payment order was justifiable because, at the time it was issued, he did not owe Toyota the full face amount of the check. Consequently, Toyota is not entitled to reasonable attorney's fees by virtue of RCW 62A.3-515(1).

## II

Tracy's right to attorney's fees at trial is governed by RCW 4.84.250-.290. In general terms, those statutes provide that the prevailing party in an action for $10,000 or less is entitled to reasonable attorney's fees, RCW 4.84.250, and that a defendant prevails if he or she is held liable for an amount equal to or less than that which he or she offered in settlement not less than 10 days before trial. RCW 4.84-.270-.280.

About a year after the arbitration award but more than 6 months before the trial de novo, Tracy's attorney sent Toyota's attorney the following letter:

> On behalf of my client, Lawrence Tracy, I hereby offer to settle all claims with Toyota of Puyallup by payment of $1,800.00. This offer will expire if not accepted within 14 days. Please advise.

Toyota does not contend that this offer was not timely made or that Tracy was not ultimately held liable for less than he offered. It does contend, however, that it was entitled to notice that Tracy would be seeking reasonable attorney's fees under RCW 4.84.250-.290 if the offer were not accepted.[8]

---

[8]Toyota additionally contends that Tracy was required to hold the offer open until trial. Given our resolution of the notice issue, it is unnecessary to address this contention.

■ We agree. In *Beckmann v. Spokane Transit Auth.*, 107 Wn.2d 785, 788-89, 733 P.2d 960 (1987), the Supreme Court, after describing the purposes of RCW 4.84.250-.280, went on to say:

> Clearly, these purposes require some type of notice so that parties would realize the amount of the claim is small and that they should settle or else risk paying the prevailing party's attorney's fees. However, it does not follow that such notice must be given at the original pleading stage.

Tracy gave no notice at all. The letter containing his offer said nothing about the consequences of not accepting, or about reasonable attorney's fees, or about any statutory authority therefor. Nor did his pleadings contain allegations sufficient to notify Toyota that Tracy would seek reasonable attorney's fees under the authority of RCW 4.84.250-.290.[9] As a result, Tracy was not entitled to reasonable attorney's fees under those statutes.

Both parties claim reasonable attorney's fees on appeal. Toyota's claim is grounded on RCW 62A.3-515(1), and Tracy's on RCW 4.84.290. For the reasons already discussed, neither statute provides support, and thus both claims fail.

The judgment is affirmed, except that the award of reasonable attorney's fees to Tracy is reversed. Neither party shall recover its costs on appeal.

WORSWICK, C.J., and ALEXANDER, J., concur.

---

[9]In his original answer and counterclaim, Tracy alleged that he was entitled to reasonable attorney's fees "pursuant to the reciprocal attorney's fee statute as codified in the State of Washington." The statute referred to is RCW 4.84.330, not RCW 4.84.250-.290, and the allegation was apparently based on the belief that the form of contract used by Toyota's repair shop provided for attorney's fees in favor of Toyota. As it turned out, however, that was not the case. Tracy also prayed for "attorneys fees and costs", but he did not state that he sought reasonable as opposed to statutory attorney's fees.